Argued November 19, 1919, affirmed January 27, 1920.

## COLLINS v. LONG.*

(186 Pac. 1038.)

**Wills—Testamentary Capacity not Lost by Guardianship.**

1. One under guardianship of his person and estate does not lose his right to make a testamentary disposition, if he retains sufficient mental capacity to execute a will.

**Wills—Testamentary Capacity of Aged Testator Under Guardianship Shown by Evidence.**

2. Evidence *held* sufficient to show that aged testator, under guardianship of his person and estate, possessed testamentary capacity.

**Wills—Evidence Insufficient to Establish Undue Influence.**

3. In a proceeding to set aside a will of an aged testator under guardianship in favor of a daughter, who took care of him, evidence *held* insufficient to establish undue influence on the part of the daughter and her husband.

From Linn: GEORGE G. BINGHAM, Judge.

Department 1.

This is a proceeding instituted to set aside the last will and testament of Samuel G. Collins, deceased, upon the grounds that at the time of its execution the maker was, by reason of his mental condition, incompetent to make a will. The petition of the plaintiffs is long and contains recitals of many evidentiary facts, which, so far as they are of importance here, are sufficiently referred to in the opinion. The defendants answered the petition and a trial was had in the County Court of Linn County, resulting in a decree setting aside the will. Upon an appeal to the Circuit Court, this decree was reversed and one entered in favor of the defendants, from which decree this appeal is taken.

AFFIRMED.

*The question as to what is testamentary capacity is discussed in notes in 27 L. R. A. (N. S.) 2; L. R. A. 1915A, 444.     REPORTER.

For appellants there was a brief and an oral argument by *Mr. N. M. Newport.*

For respondents there was a brief and an oral argument by *Mr. H. H. Hewitt.*

BENSON, J.—There are two questions now presented for our consideration. The first is, Was Samuel G. Collins, on June 9, 1916, mentally competent to make a will? The second is, Was such will the result of undue influence, exerted upon the testator by the defendants Ada L. Long and her husband John H. Long?

The history involved in the investigation of the case, as gleaned from the pleadings and the testimony, is about as follows:

Samuel G. Collins, who was 94 years of age at the time of the execution of the document tendered for probate as his last will and testament, had been married twice, his first wife having died after bearing two children who still survive, being the defendants Ada L. Long and John R. Collins. Subsequently he married the plaintiff Laura A. Collins, who survives as his widow, by whom he had six children who survive, and are plaintiffs here, together with five grandchildren who are the offspring of a deceased daughter. Both marriages occurred in Iowa. The family moved to Oregon in 1875, where the deceased purchased the farm which constitutes practically all of the estate involved in this litigation. It appears that on April 25, 1877, the defendant Ada L. Long, who was then, according to her own testimony, fifteen years of age, and according to her stepmother, seventeen, was, for some reason which the record does not undertake to explain, driven from home, penniless, and forbidden to return, and thereafter the mention of her name in the household

was tabooed. Thereafter, according to evidence offered by the plaintiffs, strangers, within the next two or three years, wrote to the girl's father, urging him either to take her back into the home or to provide for her support, but he refused to do either. In some fashion she managed to survive and support herself, and finally was married to the defendant, John H. Long, with whom she is still living at their home in Bellingham, Washington. On a visit to California with her husband, she visited her father at his farm, arriving there on his ninetieth birthday, and was cordially received during a visit of a few days. In 1913, proceedings were begun in the County Court of Linn County for the appointment of a guardian for Samuel G. Collins, upon the ground that he was suffering from senile dementia and was in danger of wasting his property, and John R. Collins was appointed such guardian. Thereafter, Mrs. Long made another visit to her father, finding him at the home of the guardian, at Independence, in Polk County. During this visit, the old man filed a petition in the County Court of Linn County to be relieved from the control of a guardian, insisting that he was fully competent to look after himself and his property. After a hearing, his petition was denied. Immediately thereafter, he undertook to convey to his daughter, Mrs. Long, the north half of his farm, and the deed so executed was duly recorded by her, and, with the consent of the guardian and the County Court, she took her father with her to her home in Bellingham. The guardian commenced a suit in the Circuit Court of Linn County to set aside the conveyance to Mrs. Long, and a decree was made and entered in accordance with the prayer of the complaint. Mrs. Long and her father returned from Bellingham to con-

test this suit, and after its conclusion again went to the home in Bellingham, where the old man remained until his death, which occurred on December 9, 1916. On June 9, 1916, the old man employed John R. Crites, an attorney practicing law in Bellingham, to write his last will and testament, which was done, and this instrument, properly executed and witnessed, is the one now contested. By its terms, the north half of the farm in Linn County is devised to the daughter, Ada L. Long, and in the south half is granted a life estate to the testator's widow, with remainder over to the other sons and daughters and the children of the deceased daughter, in equal shares.

1. The evidence by which the plaintiffs seek to establish the testator's incompetency, consists, in the first place, of the decree of the County Court, adjudging the testator to be an incompetent person and appointing a guardian of his person and estate. Counsel for plaintiffs urges that such decree, not having been appealed from, is *res adjudicata,* and conclusive. This contention is fully answered by the opinion *In re Sturtevant's Estate,* 92 Or. 269 (178 Pac. 192, 180 Pac. 595), in which it is held that—

"A person under guardianship does not on that account lose his right to make testamentary disposition of his estate, if he retains sufficient mental capacity to execute a will."

In the case of *Ames' Will,* 40 Or. 495 (67 Pac. 737), this court speaking by Mr. Justice MOORE, said:

"The rule is settled in this state that if a testator at the time he executes his will understands the business in which he is engaged, and has a knowledge of his property, and how he wishes to dispose of it among those entitled to his bounty, he possesses sufficient testamentary capacity, notwithstanding his old age, sickness, debility of body, or extreme distress."

There is evidence tending to show that before the old
man was taken to Bellingham he was very forgetful,
would put money away and be unable to recall where
he had placed it, would fail to recognize old acquaint-
ances, or familiar places, and that he on one occasion
was heard tapping the wall of his sleeping apartment
with his cane, and when asked why he did so, explained
that he was driving out the ghosts. Our attention is
also called to the fact that on another occasion when
his daughter entered the kitchen with an apron full of
chips, he referred to the chips as a lapful of "nigger
babies," and laughed. And on another occasion, when
the heavy rains had raised the water in a slough which
passed through other farms before it reached his, he
complained that neighbors were turning in water to
drown out his farm. All of these fragments of evi-
dence occurred more than two years before the old man
executed the will in question. Upon the other hand,
Mr. Crites, the lawyer who prepared the will, says that
he received all of the data and information from the
old man himself, who had no written memorandum
with him when he described the property and named
the members of his family, and that the testator ap-
peared to him to be exceptionally bright and clear men-
tally at the time. The same witness testifies further
as follows:

"Well, he told me that he had two sets of children
and said that this farm in Oregon, which amounted to
about two hundred acres, was purchased or procured
with money that came from land that was owned by the
mother of Mrs. Long and John Collins,—his son John—
I think it was back in Iowa, and that when he married
his present wife they practically kicked Mrs. Long out
to hustle for herself, and she had been making her own
living for years, ever since, and he felt as though he
had never done anything for her and had done her a

great wrong and he felt as though he would like to make that wrong right in making this will. That came up when I suggested to him why he did not make John and Mrs. Long equal in his bounty, and he said that he believed that he could right it, and while he wanted his wife to have a living during her lifetime, he felt that the other children had been practically raised out of the proceeds of this farm, and Mrs. Long never had any benefit from it. So he thought by giving her the north one half of the land and allowing his wife to have the other one half during her lifetime and giving the other one half that his wife had during her lifetime, to all of the children—and especially as John had always enjoyed the use of this farm he ought to be classed with the other children—he could make things right.''

W. A. McCutcheon, one of the subscribing witnesses to the will, says:

''At the time he talked very intelligently and seemed to have quite a business head on him, and was very firm in any remarks he made and wanted everything done exactly the way he wanted it. I do not believe you could change the old man's mind at all. He seemed to be perfectly competent to make a will and seemed not to forget it, and seemed to know what he was talking about.''

Mr. Fred P. Offerman, the other subscribing witness, says:

''I think he was competent, as far as I know. He acted that way. He was rather an old man but I supposed he was competent.''

2. Doctor Goodheart, a physician at Bellingham, who had attended the old man professionally on several occasions, the last being the day on which the will was executed, testified that he regarded him as an exceptionally capable man for his age, and quite competent. We think that under the law as declared by this court in the cases cited, the testator was fully competent.

3. The remaining topic for consideration is that of the exercise of undue influence. In support of this, plaintiffs call our attention to the deeds executed in favor of Mrs. Long while the decedent was under the control of a guardian, her taking him to her home in Bellingham and keeping him out of touch with his family, her active defense of the suit to set aside the last deed made to her by the old man, and the alleged statement made by her, that she intended to get the property mentioned in the will or spend a considerable sum of money in the effort. It is further urged that although she and her husband both testify that they never at any time discussed with the old man the contents of his will, they are not to be believed because she is a vicious and dishonest woman. It is true that the petition contains this allegation:

"That the said Ada L. Long is a scheming, unprincipled woman without sense of honor, and for years was what is commonly called and termed 'An Adventuress,' and it was a part of her scheme and purpose in getting him to go with her to the State of Washington, and getting permission to take him to the said state and out of the State of Oregon, was to get his property."

No evidence was offered in support of these allegations and they simply add to the weight of wrong heaped upon this defendant by the occupants of the house to which she had a right to look for guidance and protection. The statement of the testator to his attorney, that he was making this bequest in an effort to atone for the hideous cruelty of driving an unformed country girl, not more then 17 years old, out into a hostile world to fend for herself, is much more impressive. Practically every legal question presented in this case, has been fully discussed and settled *In re*

*Sturtevant's Estate,* 92 Or. 269 (178 Pac. 192, 180 Pac. 595), and it is therefore needless to enlarge upon them here. We conclude that the petitioners have not established the charge of undue influence, and the decree of the Circuit Court is affirmed.        AFFIRMED.

BEAN, BURNETT, and HARRIS, JJ., concur.