Argued March 15, affirmed May 22, 1928.

## ADAM S. CLARK *v.* GEORGE W. CLARK, EXECUTOR, ET AL.

(267 Pac. 534.)

</div>

**Wills—Person of Lawful Age, Having Mental Ability to Comprehend Nature of Act, Extent of Property, Relationships and Natural Beneficiaries, has "Testamentary Capacity."**

1. Person of lawful age has "testamentary capacity" to make will, if at time of its execution he has sufficient mental ability to under-stand and comprehend nature of act, value, condition and extent of his property, relations to persons about him, number and names of those who are natural objects of his bounty, and to form rational judgment regarding such matters.

---

1. What constitutes capacity or incapacity, see notes in 27 L. R. A. (N. S.) 2; L. R. A. 1915A, 450. See, also, 28 R. C. L. 86.

Wills—Evidence Showing Testatrix Understood Desired Disposition
of Property and Beneficiaries Held Sufficient to Prove Capacity.

2.    Evidence that testatrix had full and complete understanding of
disposition which she wanted to make of her property, and of per-
sons to whom she wanted it to pass, and amounts which she wanted
each to receive, *held* to show that testatrix, at time she executed
codicil, was of sound and disposing mind and memory.

Wills—Evidence That Testatrix, Eighty Years Old and Enfeebled,
had Confused Mind, but Knew and Understood Persons Present,
Held Insufficient Alone to Invalidate Codicil.

3.    Evidence that testatrix's mind was dazed and confused, but
that she knew persons present, and understood what was said to her,
and that testatrix was about eighty years old and enfeebled at time
she made codicil, *held* insufficient alone to invalidate codicil.

Wills — Testator, Understanding What He is Doing, and Knowing
Property and Desired Distribution, has Testamentary Capacity,
Though Old and Debilitated.

4.    If testator, when executing will, understands what he is doing,
knows what he has to dispose of and how he wishes it distributed,
he has testamentary capacity, though he may be very old and ill
and extremely debilitated and distressed.

Wills — Presumption Arising from Appointment of Guardian That
Ward is not of Sound and Disposing Mind is Disputable and
not Conclusive in Will Contest.

5.    Though appointment of guardian by court of competent juris-
diction creates presumption that person for whom guardian is ap-
pointed is not of sound and disposing mind and memory, such pre-
sumption is disputable, but not conclusive, and may be overcome by
evidence in will contest.

Wills — Presumption Arising by Appointment of Guardian That
Testatrix was not of Sound Mind Held Overcome by Evidence.

6.    Evidence that testatrix had full and complete understanding
of disposition which she wanted to make of her property and of per-
sons to whom she wanted it to pass and amounts which she wanted
each to receive *held* sufficient to overcome presumption arising from
appointment of guardian over testatrix, that she was not of sound
and disposing mind and memory.

Wills — Physician's Testimony That Testatrix was Afflicted With
Senile Dementia Held not to Show Her Incapacity to Make Will,
Where Other Testimony of Physician Showed Her of Sound
Mind.

7.    That physician described condition of testatrix as being "senile
dementia" did not show testatrix did not have capacity to make a

---

4.    See 28 R. C. L. 94.
5.    Guardianship of adult as affecting testamentary capacity, see
note in 8 A. L. R. 1375.  See, also, 28 R. C. L. 100.

will, where testimony of physician was to the effect that testatrix was of sound and disposing mind and memory and capable of making the will.

**Wills—Codicil, Requiring Insurance Received by Children to be Considered as Advancement, Held not Void as Attempted Disposition of Property not Belonging to Estate.**

8. Codicil, providing that insurance money collected by children should be considered as advancement and taken into account in distributing estate, *held* not void as attempt to dispose of property which on testatrix's death did not belong to estate, even though beneficiaries had possession of insurance certificates, and though certificates contained no power to change beneficiaries, since testatrix could direct distribution of own property so that children not receiving insurance would share equally with beneficiaries of insurance certificates.

**Descent and Distribution — Wills—"Advancement" is Gift to Lineal Descendant in Anticipation of Inheritance from Intestate, Though Will may Provide That Less Property be Given to Beneficiary Receiving Advancement.**

9. An "advancement is a gift" of money or property from parent to child or other lineal descendant, made in anticipation of whole or part of what it is supposed child will inherit if parent dies intestate, and which parent intends to have deducted from share of child in estate, and only applies to person dying intestate, though advancement could be made before making of will, which could provide that less property be given or devised to such child.

**Wills — Property Passes Under Will According to Its Provisions, Without Considering Distribution of Property to Children Before Will.**

10. Where valid will is made, property passes to legatees or devisees according to its provisions, and no account in such distribution under will is made of whether before will one of children received more than other children of testator.

**Wills—Misapplication of Word "Advancement" in Codicil Held not to Affect Its Validity Where Parent's Intent to Equalize Distribution of Estate was Apparent.**

11. Misapplication of term "advancement," contained in codicil, cannot affect its validity, where intent of parent that children receiving proceeds of insurance on her life should in ultimate distribution of estate receive no greater amount than that received if policies had been payable to her estate, was plainly apparent.

---

Descent and Distribution, 18 **C. J.**, p. 911, n. 90.
Wills, 40 Cyc., p. 1004, n. 4, p. 1007, n. 14, 15, p. 1008, n. 16, 18, p. 1009, n. 29, p. 1922, n. 88.
9. See 1 **R. C. L.** 653.

From Multnomah: J. W. KNOWLES, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief over the name of *Mr. G. G. Smith,* with an oral argument by *Mr. W. L. McFarling.*

For respondents there was a brief and oral arguments by *Mr. W. A. Carter* and *Mr. Nicholas Jaureguy.*

RAND, C. J.—This is a proceeding to contest the validity of a codicil to a will. Thresea Clark, the testatrix, died testate on April 30, 1924, and left surviving her four children, who were her sole heirs at law. Of these one is the contestant. Two are the proponents of the will, and the fourth is not made a party to these proceedings. There is no allegation or proof of fraud, coercion, duress or undue influence, nor is there any contention that the codicil was not executed with all of the formalities required by law. The sole charge made is that testatrix at the time of its execution did not have testamentary capacity to make a will. The will was made October 10, 1923, and the codicil on November 22d following. By the terms of the will, testatrix gave and devised her property in equal shares to her four children. The codicil provided that:

"In the event any of my said children collect any insurance on my life either fraternal or otherwise, it is my will that any money so collected shall be deemed an advance from my estate to the child collecting the same and such collection shall be taken into account in any distribution of my estate."

Contestant also contends that the codicil is void for the reason that it attempted to dispose of property which upon her death, it is claimed, did not belong to the estate.   This contention will be considered later.

1. It is a settled principle of law that a person of lawful age has testamentary capacity to make a will if at the time of its execution he has sufficient mental ability to understand and comprehend the nature of his act, the value, condition and extent of his property, his relations to the persons about him, the number and names of those who are the natural objects of his bounty, and regarding such matters to form a rational judgment: 1 Alexander's Commentaries on Wills, § 329.   In stating this principle, this court has said in *Ames* v. *Ames,* 40 Or. 495 (67 Pac. 737):

" * * * The rule is settled in this state that if a testator at the time he executes his will understands the business in which he is engaged, and has a knowledge of his property, and how he wishes to dispose of it among those entitled to his bounty, he possesses sufficient testamentary capacity, notwithstanding his old age, sickness, debility of body, or extreme distress."

The rule thus stated was restated with approval in *Collins* v. *Long,* 95 Or. 63 (186 Pac. 1038).   See, also, *In re Diggins' Estate,* 76 Or. 341 (149 Pac. 73); *In re Sturtevant's Estate,* 92 Or. 269 (178 Pac. 192); *In re Failing Will,* 105 Or. 365 (208 Pac. 715); and it has been held in the Sturtevant case, *supra,* that a man may be capable of making a will and yet be incapable of making a contract or managing his estate.

2. Applying this principle to the facts of this case, we think that the evidence clearly shows that testatrix at the time she executed her codicil was of sound and disposing mind and memory.   The codicil was prepared by Mr. John K. Kollock, a well-known lawyer

of Portland, and signed by testatrix in his presence and attested by him and two others. According to his testimony, testatrix had a full and complete understanding of the disposition which she wanted to make of her property and of the persons to whom she wanted it to pass and the amounts which she wanted each to receive. Among other things, he testified:

"I asked her what she wanted done, and she said she wanted a codicil drawn so that all of her children would receive an equal amount under the will; and she stated to me that there was some insurance, and she wished that taken into account on the distribution, so that they would ultimately, by all sources, receive the same amount of money. I am only summarizing what she said. It took her some time to say that; she was very weak, but apparently thoroughly understood what she was saying to me. I had no question at the time but that she thoroughly understood what she was asking me to do, and when I read the will over to her, I read the will over to her (meaning the codicil), I said, 'Is that just what you want, Mrs. Clark?' She said, 'That's just what I want.' "

According to Mr. Kollock's testimony he read the codicil to testatrix before it was executed and again immediately thereafter. The other two subscribing witnesses to the codicil both testified to the effect that the codicil was read to testatrix by Mr. Kollock and that testatrix assented to its terms and that testatrix fully understood the disposition she was making of her property. Their testimony in every way corroborates the testimony of Mr. Kollock. No other persons were present at the time and there is no fact or circumstance testified to which in any way discredits the testimony of these three subscribing witnesses. The testimony of these witnesses was taken before an able and experienced trial court, who found that testa-

trix did have testamentary capacity at the time she executed the codicil and we concur in that finding.

3, 4. The will was made about six weeks before the codicil. There is no claim made that the will itself is invalid; that it was valid is admitted by contestant. There is no evidence of any change in the mental condition of testatrix between the time when she made her will and the time when she made the codicil. The will was executed in the office of her physician and he testified that testatrix was at that time of sound mind. He was called to attend testatrix at the time the codi-'cil was made, but did not attend. He did, however, visit testatrix on the following day and at that time he found that testatrix's mind was, as he expressed it, "dazed and confused" but at that time he testified that she knew the persons present and understood what was said to her. Testatrix was about eighty years of age and was much enfeebled at the time she made the codicil. Those circumstances alone are not sufficient to invalidate a will. The rule is that if a testator, when executing his will, understands what he is doing, knows what he has to dispose of and how he wishes it distributed, he has testamentary capacity, though he may be very old and ill and extremely debilitated and distressed: *Swank* v. *Swank,* 37 Or. 439 (61 Pac. 846); *Ames* v. *Ames, supra,* and other cases above cited.

5, 6. It appears from the evidence that for some two or three years prior to the death of testatrix her business affairs had been conducted by a guardian, three such having been separately appointed. This fact is referred to as affording some ground for holding the codicil invalid. It is well settled in this state that while the appointment of a guardian by a court

of competent jurisdiction creates a presumption that the person for whom the guardian is appointed is not of sound and disposing mind and memory, yet it is equally well settled that the presumption is a disputable and not a conclusive one and may be overcome by other evidence: *Ames* v. *Ames, supra; In re Sturtevant's Estate, supra; Collins* v. *Long, supra.* The testimony in this case was sufficient to overcome such presumption.

7. There was other testimony to which we have not referred bearing upon the question of the testamentary capacity of the testatrix. The physician to whose testimony we have referred to was called as a witness for the proponents of the will. His testimony was to the effect that testatrix was of sound and disposing mind and memory during the entire time he treated her. In giving this testimony, he described her condition as being "senile dementia," and it is contended that a person thus afflicted does not have the capacity to make a will and this fact is relied upon very strongly by contestant. Without inquiring into the effect of such a disease upon a person, it is only necessary to say that, if the disease has the effect contended for by contestant, the testimony of the witnesses, and the testimony of the physician himself in describing the mental condition of testatrix, would contradict that she had a disease of the mind which would render her incapable of making a will. Other witnesses were called but no witness testified to any fact or circumstances which could lead a reasonable person to believe that testatrix did not have a sound and disposing mind and memory at the time she executed both the will and codicil.

8. This brings us to the last contention, namely, that the codicil is void because it directed the disposal

of proceeds of insurance policies which, contestant claims, would not be the property of testatrix's estate at the time of her death. The evidence shows that for many years prior to her death, testatrix was a member of two fraternal organizations and that each had issued a certificate or policy for $2,000, the proceeds of which were to become payable upon her death to the beneficiaries named therein. The first beneficiary was her husband and, after his death, the four children were named as beneficiaries and subsequently, and before the execution of the codicil, these certificates or policies named in one contestant as the sole beneficiary and in the other his brother, John C. Clark, and upon her death each received said sum of $2,000. Thus far these facts are shown, but other facts material to this question are not shown. There is no evidence in the record of any of the provisions contained in these certificates or policies, nor of the constitution, by-laws or regulations of either of these fraternal organizations. There is no evidence in the record sufficient to show in whose possession the certificates were. There is some evidence tending to show that the two beneficiaries had agreed with their mother to pay her dues and assessments. There was other evidence contradicting this. Whether the beneficiaries were in possession of the certificates and held the same under some contract with testatrix is only a matter of speculation; but, assuming that they did have possession and that they held them under a contract with their mother and that there was no power reserved in testatrix to change the beneficiaries, those facts alone would not defeat the provisions of the codicil. Testatrix was dealing with her own property and, in disposing of it, she directed that her property should be so distributed that her other

two children should receive enough more of her property than the two beneficiaries should receive to make their share equal to the share of the two beneficiaries after such beneficiaries had received the proceeds of these certificates or policies. Testatrix had a right to thus dispose of her property so that those who received the proceeds should receive that much less than that which would have been their distributive share under the will if the codicil had not been executed. Hence, upon this question it is immaterial whether the beneficiaries had a vested interest or only a contingent interest in the proceeds of these certificates or policies prior to the death of their mother.

9–11. The codicil refers to these proceeds as an advancement. An advancement is a gift of money or property from a parent to a child, or other lineal descendant, made in anticipation of the whole or a part of what it is supposed such child will inherit on the death of the parent, if the parent dies intestate, and which the parent intended to have deducted from the share of the child in the estate of the parent. In the nature of things, this could only apply to one dying intestate, although, of course, an advancement could be made by a parent to a child before the making of a will and then the will could provide that a less amount of money or property should be given or devised to such child. But this would be only a reason or motive for making the particular provisions contained in the will. Where a valid will is made, the property passes to the legatees and devisees according to its provisions and no account in such distribution under the will is made of whether or not, before the will was made, one of the children received more than the other children of the testator. The misapplication of terms contained in the codicil cannot affect its validity

where, as here, the intent of the parent is so plainly apparent. It is clear from a reading of the codicil that testatrix intended that those who received the proceeds of any insurance upon her life should, in the ultimate distribution of her estate, receive no greater amount than they would have received if the policies had been payable to her estate.

Finding no error in the decree appealed from, it is affirmed.                                                    AFFIRMED.

COSHOW, McBRIDE and ROSSMAN, JJ., concur.