Argued January 31, affirmed March 27, decree re-entered and costs taxed May 29, 1923.

# Re PHILLIPS' WILL.

## TURNEY et al. v. STONE et al.

(213 Pac. 627.)

**Wills—Person of Requisite Age and Sound Mind may Dispose of Property by Will, Regardless of Relatives.**

1. Under Section 10092, Or. L., allowing every person of twenty-one years of age and of sound mind to devise all his real and personal property, and Section 10093, allowing every person over eighteen of sound mind to dispose by will of his goods and chattels, and Section 10095, providing for the formal requisites of a will, a person of the requisite age and of sound mind may dispose of property without regard to relatives.

**Wills—Testator has Testamentary Capacity if He Understands Nature of His Property, Mode of Disposition, and Persons to be Benefited.**

2. If it appears that testator, when making his will, comprehends the nature of the act in which he is then engaged, knows

What constitutes testamentary capacity or incapacity, see notes in 27 L. R. A. (N. S.) 2; L. R. A. 1915A, 444.

the nature and extent of the property which makes up his estate and which he intends the disposition of, and has in mind the persons who are, should, or might be the objects of his bounty and the scope and reach of the provisions of the written instrument, he has sufficient capacity to make a will.

**Wills—Question of Testamentary Capacity was One of Fact.**

3. On the contest of a will made by an aged lady, who left all her property to an old folks' home, a church, and a state normal school, and excluded her brothers and sisters, and it appeared that she possessed mentality concerning her property up to within five days of her death, the question of her testamentary capacity was one of fact.

**Wills—Proponent of Will must Prove Testamentary Competency.**

4. In the probate of a will, the burden of proof rests with the proponent to prove the testamentary competency of testatrix.

**Wills—That Scrivener Informed Testatrix of State Normal School, Which was One of the Chief Objects of Her Bounty, Held not Improper.**

5. Where an aged lady made a will whereby she excluded her brothers and sisters, leaving her property to a state normal school, an old folks' home, and a church, it was lawful for the scrivener of the will to inform her concerning the state normal school; she desiring to aid some school where teachers were trained.

**Wills—Finding of Testamentary Capacity Sustained.**

6. Where testatrix, an aged lady, executed a will leaving her property to an old folks' home, a church, and a state normal school, and excluded her brothers and sisters, *held*, that a finding that testatrix possessed the capacity to make the will was sustained.

From Clackamas: J. U. CAMPBELL, Judge.

Department 2.

This is a will contest. The testatrix, Rachel Phillips, died on May 1, 1920, at the age of seventy-nine years, leaving an estate of the value of more than $26,000. She left surviving her the following next of kin and heirs at law, who are the contestants in this proceeding:

John Bare, brother, age 88 years, residing at Smithfield, Pa.; Rebecca Turney, sister, age 82 years, residing at West Linn, Or.; Justus Bare, brother, age about 77 years, residing at Adah, Pa.; Louis Bare, brother, age about 72 years, residing at Dunbar, Pa.;

Mary Riffle, sister, age about 70 years, residing at Messmore, Pa.

The beneficiaries under the will involved herein are: Old Folks' Home, of Salem, Oregon; First Baptist Church, of Oregon City, Oregon; and, Oregon State Normal School, situate at Monmouth, Oregon.

On November 20, 1919, Rachel Phillips called to her home Wm. M. Stone, her attorney, and requested him to prepare her will. He drew the will and she executed it. Thereafter Mr. Stone concluded that the document had been defectively witnessed, and, about three weeks later he rewrote it. The will, as redrafted, was formally executed on December 16, 1919.

On May 3, 1920, Wm. M. Stone filed his petition in the County Court of the State of Oregon in and for Clackamas County, for the probate of the will of the decedent, Rachel Phillips. On May 10, 1920, Hon. H. S. Anderson, County Judge, after hearing proof concerning the execution of the will, made an order admitting it to probate, appointed Wm. M. Stone executor thereof, and ordered letters testamentary to be issued to him.

On September 4, 1920, John Bare, Rebecca Turney, Justus Bare, Louis Bare and Mary Riffle, heirs of Rachel Phillips, deceased, instituted in the County Court of Clackamas County, Oregon, a contest of the will. For ground of contest, they aver the incompetency of Rachel Phillips to make a will. They allege that she was—

"old, infirm and weak, and incapable mentally and physically, and incapacitated to make a will; that her mind, through bodily ailment and disease, at the time said purported will was signed, was so confused and weak that she was unable to recall or remember the names or number of her brothers and sisters; * * to know what property or the amount thereof she

possessed, or the kind thereof, * * how to dispose of the same, or what she was doing, at the time said alleged will was signed.''

The petition further avers that in signing the will she was not acting voluntarily, nor did she understand in whose favor the will was framed;

"That the above petitioners herein, residing in Pennsylvania, have authorized and empowered Rebecca Turney, the petitioner who signs this petition, to file the same, to institute proceedings of contest herein, and to conduct the same in her and their behalf.''

Issue was joined by the executor, the Old Folks' Home, and by the First Baptist Church of Oregon City. Trial was had and findings of fact were made as follows:

" * * That at the time * * Rachel Phillips made and executed her last will and testament * * she was of sound mind and testamentary capacity * * , and the same was executed as her free and voluntary act.''

Thereafter the matter was heard in the Circuit Court upon appeal from the County Court, and that court found that when Rachel Phillips made and executed her last will and testament "she was of sound and disposing mind and of testamentary capacity,'' and that the will "was executed as her free and voluntary act.'' As a conclusion of law, the court found that the proponents were entitled to a decree denying the petition of contestants, and directing that the executor proceed with the probate of the last will and testament of the deceased, Rachel Phillips.

The contestants appeal to this court, and assert that the decree and judgment sought to be reviewed are contrary to the evidence and the law.

AFFIRMED.   DECREE RE-ENTERED AND COSTS TAXED.

For appellants there was a brief and oral argument by *Mr. Jos. E. Hedges* and *Mr. Gilbert L. Hedges.*

For respondents there was a brief over the names of *Mr. Wm. M. Stone, Mr. John W. Loder, Mr. Livy Stipp* and *Mr. W. C. Winslow,* with oral arguments by *Mr. Stone* and *Mr. Loder.*

BROWN, J.—

"Every person of twenty-one years of age and upwards, of sound mind, may, by last will, devise all his estate, real and personal * * ." Or. L., § 10092.

"Every person over the age of eighteen years, of sound mind, may, by last will, dispose of his goods and chattels. Or. L., § 10093.

"Every will shall be in writing, signed by the testator, or by some other person under his direction, in his presence, and shall be attested by two or more competent witnesses, subscribing their names to the will, in the presence of the testator." Or. L., § 10095.

1. Under the foregoing provisions of the statute, it was the right of the testatrix in the case at bar, if of sound mind, to dispose of her property as she chose and as expressed by her will, without regard to her recognition of any claims upon her bounty by her contesting relatives: *Potter* v. *Jones,* 20 Or. 239 (25 Pac. 769, 12 L. R. A. 161); *Holman's Will,* 42 Or. 345 (70 Pac. 908); *Turner's Will,* 51 Or. 7 (93 Pac. 461).

In *Holman's Will, supra,* the law of this state relative to the disposition of property is thus stated by Mr. Justice Wolverton:

"The right of one's absolute domination over his property is sacred and inviolable, so that he may do what he will with his own, if it is not to the injury of another. He may bestow it whithersoever he will and upon whomsoever he pleases, and this without regard

to natural or legitimate claims upon his bounty; and if there exists no defect of donative capacity, whereby his individual will or judgment does not have intelligent and conscious play in the bestowal, or undue influence or fraud, whereby an unconscionable advantage may be taken of him through the wicked designs of another, the law will give effect to the disposition; and the right to dispose of one's property by will, and bestow it upon whomsoever he likes, is a most valuable incident to ownership and does not depend upon its judicious use (citations). And this court has held, in effect, that 'while it seems harsh and cruel that a parent should disinherit one of his children and devise his property to others, or cut them all off and devise it to strangers, from some unworthy motive, yet, so long as that motive, whether from pride or aversion or spite or prejudice, is not resolvable into mental perversion, no court can interfere.' *Potter* v. *Jones,* 20 Or. 239 (25 Pac. 769, 12 L. R. A. 161). To the same purpose are *Hubbard* v. *Hubbard,* 7 Or. 42; *Clark's Heirs* v. *Ellis,* 9 Or. 128; *Chrisman* v. *Chrisman,* 16 Or. 127 (18 Pac. 6); *Darst's Will,* 34 Or. 58 (54 Pac. 947)."

The will in the case at issue has been criticised because the testatrix donated her property to charity instead of devising it to her next of kin and heirs at law.

The property belonged to the testatrix. She was a widow and childless. None of her relatives had helped Mrs. Phillips to earn her estate, nor, so far as appears from the record, were any of her kin dependent upon her for their means of livelihood. It is true that her niece, Mrs. Farmer, had served her in different capacities prior to the execution of the will, for which testatrix said she had paid her the sum of $600. The testatrix considered that if Mrs. Farmer had not been fully compensated for what she had done, she could file claims against her estate.

We will note while passing, that Mrs. Farmer, subsequent to the execution of the will, rendered her aunt, the testatrix, great service, for which she has not been compensated. However, that does not supply a reason for holding the will to be invalid, as will be noted from the authorities hereinbefore referred to.

The pivotal point in this case is the testamentary capacity of Rachel Phillips.

2. Rachel Phillips was nearly 79 years old when she made her last will. Her body was weak. She suffered from physical ailments because of diseased organs. But none of these conditions rendered her incapable of disposing of her property by will. The law of this state, as announced by the rule adduced from the following decisions is that if, from all the facts and circumstances taken together, it satisfactorily appears that the testator, at the time of making his will, comprehends the nature of the act in which he is then engaged, knows the nature and extent of the property which makes up his estate and which he intends to dispose of, and has in mind the persons who are, should or might be, the objects of his bounty, and the scope and reach of the provisions of the written instrument, he has sufficient capacity to make a will: *Hubbard* v. *Hubbard*, 7 Or. 42; *Clark's Heirs* v. *Ellis,* 9 Or. 128; *Chrisman* v. *Chrisman,* 16 Or. 127 (18 Pac. 6); *Potter* v. *Jones,* 20 Or. 239 (25 Pac. 769, 12 L. R. A. 161); *Luper* v. *Werts,* 19 Or. 122 (23 Pac. 850, 7 Am. Probate Rep. 243); *Franke* v. *Shipley,* 22 Or. 104 (29 Pac. 268); *Rothrock* v. *Rothrock,* 22 Or. 551 (30 Pac. 453); *In re Cline's Will,* 24 Or. 175 (33 Pac. 542, 41 Am. St. Rep. 851); *Carnagie* v. *Diven,* 31 Or. 366 (49 Pac. 891); *Swank* v. *Swank,* 37 Or. 439 (61 Pac. 846); *Ames* v. *Ames,* 40 Or.

495 (67 Pac. 737); *Skinner's Will,* 40 Or. 571 (62
Pac. 523, 67 Pac. 951); *Buren's Will,* 47 Or. 307
(83 Pac. 530); *Pickett's Will,* 49 Or. 127 (89 Pac.
377); *Stevens* v. *Myers,* 62 Or. 372 (121 Pac. 434,
126 Pac. 29); *In re Hart's Will,* 65 Or. 263 (132
Pac. 526); *Wade* v. *Northup,* 70 Or. 569 (140 Pac.
451); *In re Diggins' Estate,* 76 Or. 341 (149 Pac.
73); *Darby* v. *Hindman,* 79 Or. 223 (153 Pac. 56);
*In re Sturtevant's Estate,* 92 Or. 269, 281 (178 Pac.
192, 180 Pac. 595); *Collins* v. *Long,* 95 Or. 63 (186
Pac. 1038, 8 A. L. R. 1370); *In re Faling's Will,* 105
Or. 365 (208 Pac. 715).

3. The testamentary capacity of Rachel Phillips
was a question of fact, to be adjudged, after fair
consideration of the evidence adduced at the trial for
the purpose of ascertaining whether she possessed
mental competency, within the rule announced by the
unbroken line of authorities cited above. That she
was old, diseased, and infirm of body, there is no
doubt, but, from the evidence of her transactions,
it appears beyond peradventure that she possessed
mentality concerning her property up to within five
days of her death.

4. In the probate of a will, the burden of proof
rests with the proponent, and he must prove the
testamentary competency of the testatrix: *Hubbard* v.
*Hubbard, supra; Chrisman* v. *Chrisman, supra;
Holman's Will, supra; In re Will of King,* 87 Or.
236 (170 Pac. 319); *In re Dale's Estate,* 92 Or. 57
(179 Pac. 274); *In re Sturtevant's Estate,* 92 Or. 269
(178 Pac. 192, 180 Pac. 595).

5. There is evidence to the effect that the testatrix
denounced churches and schools, and for that reason
contestants say that the will is not her will. Upon the
other hand, there is testimony of a neighbor that Mrs.
Phillips held the church in great esteem, and that she

regretted her own lack of education.    There is nothing strange or unnatural in her remembering the church in her will.    For some reason, and unjustly the writer thinks, so far as the record discloses, the testatrix harbored the thought that her relatives loved her for her money alone.    When she made her will, she was under the apprehension that she could not long survive.    That instrument was executed in contemplation of death in the near future.    Many people who live aloof from the church, when the last summons comes turn to religion for consolation.    Mrs. Phillips was an old woman, and in her brain was the thought that the "Old Folks' Home" was a worthy object upon which to bestow her bounty.    She had suffered from a lack of education, and she sought to aid some school where teachers were trained.    It was entirely lawful for the scrivener of the will to inform her, as he did, concerning the State Normal School at Monmouth.    Mrs. Miller, her neighbor, attended the First Baptist Church in Oregon City.    On one occasion she invited testatrix to accompany her. She was unable to accept the invitation owing to her physical infirmities, but she expressed her desire to attend that church, and often, upon Mrs. Miller's return from worship, talked over with her the subject matter of the pastor's sermon.    A corroborative circumstance indicating that she wanted to leave her estate to charity was the fact that during her last days at the hospital she wanted to devise some of her property to the Salvation Army, but the wish came too late for her failing strength.    The fact that testatrix talked to her neighbors, Mrs. Miller and Mrs. Winkle, about devising her property, but that she never referred to this subject when conversing with her relatives, is a circumstance of some weight.

The feeling that the aged woman entertained toward her people may be well illustrated by the story that she told Attorney Stone prior to his drafting the will. He testified:

"Before I started to write the will, she said: 'Stone, I want to tell you a story. I had a friend back east, and she was getting old, and thought she was going to die, and she thought she would find out what her relatives thought of her. She feigned deafness all at once and she bought an ear trumpet and she pretended she could not hear unless people yelled to her in that trumpet. She had six daughters and she went to live with each daughter for a month, and she pretended she could not hear unless they called to her in the trumpet. But as a matter of fact she could hear. So after having lived with each daughter for a month she concluded * * that she would give all her property to the one that spoke kindness about her, and to the one who was most unkind in her remarks about her she would devise and bequeath the old ear trumpet.' * * And I realized in drawing the will she had the same idea in mind as far as her relatives were concerned. I called her attention several times about these relatives here, * * but she said they had been amply repaid by the six hundred dollars, and if they had any more they could file their claim for it."

She claimed that she had had trouble with her relatives in the east, particularly her nieces.

Stone further testified:

"All her conversations and statements to me were to the effect that she didn't want her relatives to take anything, and wanted the will to stand."

Wm. M. Stone, of the Oregon City bar, had been the attorney for the testatrix in a number of matters prior to drafting her will. From a careful consideration of the evidence, we find no suggestion that Mr. Stone had any other design in drawing the last will and testament of the testatrix than that of learning her

purpose and committing that intention, in legal form, to writing.

In *Chrisman* v. *Chrisman, supra,* Mr. Chief Justice LORD wrote:

"That great age and bodily disease and afflictions may impair the mind or destroy its functions, rendering it unfit to transact ordinary business, is not disputed. But if such is the case, it must be shown, it cannot be assumed; for the law is well-settled 'that neither old age, sickness, nor extreme distress or debility of body incapacitate, provided the testator has possession of his mental faculties and understands the business in which he is engaged. The test is his integrity of the mind, not the body.' (Redfield on Wills, 97, 102, 125.) It often happens that aged and infirm persons, who seem to have lost nearly all memory on different subjects, when their attention is once fixed upon their own property, business, or family, understand them well. (Taylor's Medical Jurisprudence, 336.) In such case, the only effect of extreme old age is to excite the diligence of the court to inquire more closely into his mental capacity."

Old age, of itself, never renders a testator incompetent.

In *Re Diggin's Estate, supra,* the testator was about seventy-nine years of age when he executed his will, and left an estate valued at $21,000. He was afflicted with palsy, was troubled with sores on his limbs, was childish and of failing memory.

In the case of *Collins* v. *Long, supra,* the testator was of the age of ninety-four years and under guardianship.

In *Re Sturtevant's Estate, supra,* the testator was over eighty years of age and had been under guardianship for about three years prior to the time of the execution of the will. Many instances of his failing recollection were given by witnesses.

In *Buren's Will, supra,* the testator was sixty-four years of age, but was afflicted for many years with locomotor ataxia. He was very ill and died six days after the execution of the will.

In *Pickett's Will, supra,* the testator was sixty-eight years old, in gradually failing health, with a progressive hardening of the arteries.

In *Ames' Will* the testator was seventy years old and was in failing health at the time he made his will. The opinion says:

"Lowell (testator) was a member of the Church of Latter Day Saints and occasionally muttered and talked to a picture of Joseph Smith, the founder of the Mormon faith, which hung in the house, believing that Smith, though dead, possessed the 'keys of the Kingdom,' and could hear and understand what was said to him."

Nevertheless, the court held that he possessed testamentary capacity.

In the case of *Carnagie* v. *Diven, supra,* one John Campbell conveyed 320 acres of land in Baker County, of the value of $4,500, and suddenly died on the day following, at the age of eighty-three years. This court held that it could not be inferred from the fact of extreme old age that the grantor was mentally incapacitated to execute the deed. To the same effect are *Skinner's Will, supra,* and *Swank* v. *Swank, supra.*

6. After a careful consideration of all the evidence, we conclude that on December 16, 1919, the date of the execution of her will, Rachel Phillips possessed testamentary capacity.

Lord CRANSWORTH, in *Boyse* v. *Rossborough,* 6 H. L. Cas. 1, says:

"There is no difficulty in the case of a raving madman or a driveling idiot, in saying that he is not a person capable of disposing of property, but between

such an extreme case and that of a man of perfectly sound and vigorous understanding there is every stage of intellect, every degree of mental capacity. There is no possibility of mistaking midnight for noon, but at what precise moment twilight becomes darkness is hard to determine.'' 1 Alexander, Commentaries on Wills, note, § 326.

This case is affirmed. Under the circumstances as they exist, we believe the costs should be paid by the estate. It is so ordered.

AFFIRMED. DECREE RE-ENTERED AND COSTS TAXED.

McBRIDE, C. J., and BEAN and McCOURT, JJ., concur.