Argued March 22, affirmed May 22, objections to cost bill sustained June 12, 1928.

## ANNA TALBERT ET AL. *v.* OVERT SKILBRED, EXECUTOR,

### IN RE ESTATE OF BELLE SEVERSON.

(267 Pac. 396.)

**Wills—Testamentary Competency at Time of Execution of Will Only is Involved in Will Contest.**

1.  In a will contest, competency only at time will was made is in question, and incompetency before or after execution of will may exist and the will be valid.

**Wills — Evidence Held not to Establish Aged Testatrix's Mental Incompetency, or Undue Influence, Fraud or Coercion on Her (Or. L., §§ 10092, 10093, 10095).**

2.  Evidence *held* not to establish that aged testatrix was mentally incompetent to execute will leaving all her property for home

---

1.  See 28 R. C. L. 93.
2.  Undue influence, see note in 31 Am. St. Rep. 670.

for aged to exclusion of her relatives, or that will was obtained by undue influence, fraud or coercion, or in belief by testatrix that all her relatives were dead, and will was therefore properly admitted to probate, under Sections 10092, 10093, 10095, Or. L.

**Wills—Burden of Proving Undue Influence is on Contestants, and Burden of Proving Testamentary Capacity is on Proponent.**

3.   Contestants have burden of proving that will is result of undue influence, and proponent is required to show that testatrix possessed testamentary capacity when she executed will.

---

Wills, 40 Cyc., p. 1021, n. 12, p. 1023, n. 29, p. 1079, n. 88, p. 1144, n. 53, p. 1150, n. 91.

---

From Lane: GEORGE F. SKIPWORTH, Judge.

Department 2.

This is a will contest.   The proceeding was brought to set aside the will executed on July 29, 1924, by Belle Severson, a childless widow seventy-seven years of age, wherein and whereby she named as her beneficiary the Charity Board of the Lutheran Brotherhood, a corporation, and directed that that corporation take and hold her estate for the benefit of the Severson Memorial Home for the Aged, at Eugene, Oregon.

Testatrix was a resident of Lane County, Oregon, where her real and personal property was situate. She died at Portland, Oregon, on February 18, 1925. On February 19, 1925, Overt Skilbred, the executor nominated by the will, filed in the office of the clerk of Lane County his petition praying that the will be admitted to probate, which petition was granted.   On June 16, 1925, Anna Talbert, a sister, Bertina Kachel, a niece, and Edwin Kittleson, a nephew, of testatrix, filed a petition for the contest of the will.   Among other things, the petition avers that the proposed will was not the will or testament of Belle Severson be-

---

3.   Burden of proof as to undue influence or testamentary capacity, see notes in 17 L. R. A. 494; 36 L. R. A. 724, 733. See, also, 28 R. C. L. 144, 398.

cause at the time the will was executed she was, by reason of old age and protracted illness, of unsound mind and memory and therefore mentally incapacitated from making a lawful distribution of her property by will, and that she was coerced into signing the document offered as her will by the wrongful influence and fraudulent representations of Overt Skilbred, Hy Iverson, S. P. Ness and others, each of whom unduly influenced testatrix "by promises of spiritual guidance after her demise." The petition further alleges that, on the date of the execution of the will, the memory of the testatrix had failed; that she did not recall relatives entitled to her bounty; and that Skilbred and his associates "induced and persuaded the said decedent in the belief that she had no living descendants, and that all of her descendants and persons having a lawful claim upon her bounty had died, and that she was without lawful heirs entitled to her estate."

As a result of the trial the probate court found that proponent's exhibit "A" was the last will and testament of Belle Severson and was executed by her in conformity with law; that she was competent and of sound and disposing mind and memory, and was not acting under duress or undue influence in the execution of her will; that she had contemplated the disposal of her property as provided in her will for at least twelve years prior to her decease. Based upon the conclusions of law drawn from these findings, the court ordered, adjudged and decreed that the will be admitted to probate and that Overt Skilbred be appointed as executor thereof, and that the contest proceedings be dismissed. From this decree an appeal was taken to the Circuit Court, where the findings of the probate court were adopted and the contest again

ordered dismissed. From the latter decree the con-
testants appeal to this court.          AFFIRMED.

For appellants there was a brief over the names of
*Mr. G. E. Hamaker* and *Mr. Paul C. Dormitzer,* with
an oral argument by *Mr. Hamaker.*

For respondent there was a brief over the names of
*Mr. Donald Young* and *Mr. S. P. Ness,* with an oral
argument by *Mr. Young.*

BROWN, J.—1. In a will contest, competency only
at the time the will was made is in question. Incom-
petency before or after may exist and still the will
be valid.

2. The contestants claim that Overt Skilbred, a min-
ister, and S. P. Ness, an attorney of Eugene, used
their influence upon the mind of testatrix for the pur-
pose of inducing her to make a will to their advan-
tage, and that this fact is shown by the following let-
ter addressed to testatrix by Skilbred, her pastor:

"Mrs. Belle Severson,
    "172 N. 12th,
        "Eugene, Oregon.
"My dear Friend:
    "For some time I have been praying for light how
we should as a church be able to take care of our
children—our youth—our aged.
    "I commence now to see what we ought to do, and
if the good Lord will open the eyes of one of our faith-
ful members to begin with we feel sure that the others
will fall in line also.
    "You, Mrs. Severson, have been placed before me
as a model Christian of our Flock to take the lead for
big things for our church in Oregon and with Eugene
as its headquarters. The Lord brought you and your
saintly husband here for a specific purpose. He saw

you would be willing to do something for His church where others refuse to help. You have revealed that you have a heart and a vision. That's why your husband's last will was made in such a thorough Christian way. Your last will has not yet been made and I as your pastor am going to as a true friend of yours make a few suggestions as to how you should make it. Will you listen to me? I know you will. If you do what I tell you here today—your memory will be cherished and blessed for many generations, and your soul will find joy over it forever, because although you have left the earth you have fixed it so you are yet there through your means as a blessing for the coming generations.

"If you start, I am certain a dozen or more will follow. You have some property and mortgages in Eugene. This business is a continual worry and work for you. If you will take my advice—you turn over to our congregation this business and property. In return the congregation will give you the best of care as long as you live, and when your spirit has gone Home to God this congregation again will give you an honorable funeral service from our Eugene church and services at Northwood, Iowa, and place your body beside your beloved husband in the Northwood Cemetery. The congregation will as stated give you the best of care as long as you live. We shall hire a lady that you like to keep the house in order, prepare your food, and make it comfortable for you, etc. The congregation will see to it that you have the medical care and spiritual care as long as you live. This is the Biblical way of the church, and big things could be done for our people if they only would be willing to line up as God tells us.

"You will please think this vital matter over in prayer for light. And you will find, Mrs. Severson, that this will take a heavy load from your mind and soul. When you are ready come and tell me.

"Your true friend,<br>"OVERT SKILBRED."

The testimony of Dr. Chas. E. Sears, and of Mrs. Lulu C. Baker, Helen R. Baird and Elva C. Hill, nurses at Portland Convalescent Hospital, tends to show that, during the last four weeks of the life of testatrix she was greatly emaciated, weak and ill, and that during that time she was visited by Overt Skilbred, who had a number of earnest conversations with her. She went to the hospital as a patient on January 22, 1925, and died on February 18th following. It will be remembered that the will offered for probate bears date July 29, 1924, having been executed six months before she entered the hospital. The testimony further shows that, so far as the disposition of her property was concerned, the will admitted to probate was a reproduction of a will that she had executed in March, 1924, ten months before she entered the hospital. By the latter will, however, she substituted one minister for another as executor, and this act seems to have had its influence upon the one first named as executor, who says, in effect, that, when she executed the will naming him as executor she was of sound mind and memory, but that, when she made a similar will naming another as executor in his stead, she was not.

As further strengthening the contention of respondent in upholding the will, the record shows that the testatrix, on July 7, 1923, took the initial step toward the carrying out of her desire of many years, when she executed a deed conveying a tract of land in Eugene to the board of directors of a home for the aged, this home, when established, to be known as "The Severson Memorial Home for the Aged." This was her first of a series of acts moving toward the establishment of that home. This deed was drawn by her attorney, A. E. Wheeler, of Eugene, who had previ-

ously transacted business for her, and who testified that when she signed the deed she was competent to transact business. She did not deliver the deed at that time because she was not ready to turn the property over. She kept the deed, as she kept her wills, in her safety box at the bank, whose officers testified that she was competent to transact business, as did her attending physician at Eugene.

This court has heretofore held that, under Section 10092, Or. L., permitting every person of twenty-one years of age and of sound mind to devise all his real and personal property, and Section 10093, permitting every person over eighteen years of age of sound mind and memory to dispose by will of his goods and chattels, and Section 10095, prescribing the requisites of a will, a person of the required age and of sound mind may dispose of his property without regard to relatives: *In re Phillips' Will,* 107 Or. 612 (213 Pac. 627).

We do not attempt a definition of "undue influence" in the law of wills. But, in the case of *Estate of Allen,* 116 Or. 467 (241 Pac. 996), we quoted the following from 4 Words & Phrases (2d Series), 1059:

" 'Undue influence' is that which compels the testator to do that which is against his will, from fear, the desire of peace, or some feeling which he is unable to resist."

3. The contestants have the burden of proving that the will in question is the result of undue influence. In this we believe they have failed. On the other hand, the proponent of the will is required to show that the testatrix possessed testamentary capacity when she executed her will. That he has produced the necessary proof we are satisfied. The testimony generally shows that Mrs. Severson had been a very

keen business woman; and notwithstanding the eloquence and persuasive power of Rev. Skilbred as manifested in the letter hereinbefore set out, she retained possession of, and title to, her own property until she passed away at the hospital.

The allegation in contestants' petition that testatrix believed her relatives to be dead is utterly without merit. The record shows that on leaving her home for the hospital in Portland she left directions that, if she should fail to return, her personal effects were to be sent to her sister; and the nurses at the hospital testified that, while she was a patient there she corresponded with her sister, and that she remembered her sister with affection until the end. As we wrote in the case of *In re Phillips' Will,* 107 Or. 612 (213 Pac. 627):

"The property belonged to the testatrix. She was a widow and childless. None of her relatives had helped Mrs. Phillips to earn her estate, nor, so far as appears from the record, were any of her kin dependent upon her for their means of livelihood."

We decline to hold that a philanthropic act performed by a benevolent woman is an indication of incompetency or undue influence.

This case is affirmed. Neither party shall recover costs in this court or in the courts below.

AFFIRMED. OBJECTION TO COST BILL SUSTAINED.

RAND, C. J., and BEAN and BELT, JJ., concur.