457 P.2d 662 (1969)
In the matter of the ESTATE OF Jennie MARTIN, Deceased.
Robert Martin and Violet Beeh, Respondents,
v.
The United States National Bank of Portland, (Oregon), Defendant,
Sisters of Mercy of Oregon, an Oregon Corporation, Dba Mt. St. Joseph's Residence and Nursing Home, Appellant.
Court of Appeals of Oregon.
Argued and Submitted July 7, 1969.
Decided August 22, 1969.
*663 David K. Young, Portland, argued the cause and filed the brief, for appellant.
Charles V. Elliott, Portland, argued the cause for respondents. With him on the brief were Elliott, Davis, Rader & Kitson, Portland.
Before SCHWAB, C.J., and FOLEY, FORT and BRANCHFIELD, JJ.
FOLEY, Judge.
Decedent, resident of a nursing home, executed a will in October, 1962 with defendant bank as executor, leaving her estate in equal shares to her two children, respondents herein. In May, 1965, decedent told the administrator of the nursing home she wanted to change her will. The administrator contacted James Perry, the employe of the bank who had been handling her affairs and he conveyed her wishes to her attorney who prepared a codicil. The codicil left 90 per cent of the estate to the defendant nursing home and 5 per cent to each of the two children. The trial judge found decedent lacked testamentary capacity and refused to admit the codicil to probate. His findings state that on *664 May 19, 1965, when decedent signed her codicil she did not know or comprehend the nature and extent of her property, and was not cognizant of the scope and reach of the provisions of the instrument.
The defendant nursing home appeals from these findings, urging that decedent did possess sufficient testamentary capacity to execute the codicil.
"Every person of 21 years of age and upward * * * of sound mind, may, by will, devise and bequeath [his property] * * *." ORS 114.020.
"The term `will,' * * * includes all codicils." ORS 114.010.
Under the above statutes, it is the right of every person who qualifies to dispose of his property as he sees fit.
"The requirements of sound-mindedness or mental competency, as used in ORS 114.020, have been frequently stated by this court and may be summarized as follows: (1) the person must be able to understand the nature of the act in which he is engaged; (2) know the nature and extent of his property; (3) know, without prompting, the claims, if any, of those who are, should or might be, the natural objects of his bounty; and (4) be cognizant of the scope and reach of the provisions of the document. If the foregoing conditions are found to prevail at the time of executing the instrument, the testator is deemed to have sufficient capacity to make a will. Re Phillips' Will, 107 Or. 612, 618, 213 P. 627 (1923); In Re Walther's Estate, 177 Or. 382, 386, 163 P.2d 285 (1945); In Re Estate of Hill, 198 Or. 307, 317, 256 P.2d 735 (1953).' Kastner v. Husband, 231 Or. 133, 136, 372 P.2d 520, 522 (1962).
The trial judge found specifically that she (1) "did not know or comprehend the nature and extent of her property * * *" and (2) "was not cognizant of the scope and reach of the provisions of the instrument." He did not make a finding with reference to the requirement that she must "be able to understand the nature of the act in which she is engaged" and "know without prompting the claims of those who are * * * the natural objects of her bounty."
Referring to these matters as to which the trial judge made no finding, there is uncontroverted evidence that the decedent initiated the action to change her will and followed through over a period of weeks. This culminated in the execution on May 19, 1965, of the very instrument she was seeking to create.
The natural objects of decedent's bounty were, of course, her two children. They were specifically mentioned in the codicil and they were the subject of frequent discussion between the testatrix and others prior to and during the preparation of the codicil. The evidence amply demonstrates awareness by the testatrix of the objects of her bounty.
With reference to decedent's comprehension of the nature and extent of her property, the testimony of James Perry, the employe of the bank who had been handling her affairs, is pertinent:
"Q Did you tell her the amount she had in the estate at that time?
"A Yes, I did.
"Q How much was it, around $20,000?
"A Yes, it was.
"* * *
"Q Did you tell her what five per cent to each child would amount to?
"A Yes, I did. At that time she was looking at this in amounts as to the percentage of her trust and the amount from the Joseph Martin trust.
"Q Do you think she understood all of this?
"A Yes, I do."
The knowledge one must have of the nature and extent of his property is a general one and the size and intricacy of the estate ordinarily are not important in this regard. What investments the trustee bank may have made of the funds would not have been as important to the testatrix as that there were funds and in general *665 the value thereof. That testatrix was aware of the dollar value of her estate was brought out in contestants' case on the direct examination of Mr. Perry quoted supra.
The trial court found she "was not cognizant of the scope and reach of the provisions of the instrument." The testatrix was the one who initiated the action which resulted in the codicil. It is uncontradicted that she contacted the administrator of the nursing home and indicated that she wanted to change her will in order to make the nursing home a beneficiary. The administrator contacted Mr. Perry and he then met with the testatrix and discussed the requested changes. Mr. Perry conveyed her wishes to the attorney who prepared the original will. He prepared a draft of a codicil and Mr. Perry took it to the testatrix and discussed the changes. A final draft was then prepared by the attorney and presented to the testatrix by Mr. Perry on May 19, 1965, at which time the codicil was executed and witnessed.
The sequence of events and content of the codicil rather strongly evidence an ability to create and carry out a testamentary plan and are entirely consistent with what the testatrix set out to do. This forces us to the conclusion that she was "cognizant of the scope and reach of the provisions of the instrument."
The only medical testimony presented by either party was by Dr. Russell Baker who treated the testatrix for her epilepsy. He testified that in his opinion she was competent when he saw her in May 1963, two years before the execution of the codicil, and her condition had not changed markedly when he saw her in January 1966, some eight months after the execution of the codicil. The crucial date is the date of the execution of the will, May 19, 1965. Dr. Baker's testimony is so remote as to time as to be of little value. If it does anything, however, it supports decedent's competency.
In the probate of a will or codicil it is the proponent's burden to prove the testamentary competency of the testatrix. Re Phillips' Will, 107 Or. 612, 213 P. 627 (1923). Here the execution of the codicil was in due form. In such cases the proponents are entitled to the presumption that testatrix was competent. Ingraham v. Meindl, 216 Or. 373, 375, 339 P.2d 447 (1959). Here the codicil was witnessed by a mother and daughter, the mother Mrs. Rollins being one of the residents of the nursing home. While the mother's recollection of details was imperfect, she recalled the occasion of the execution of the will and characterized testatrix as a "very intelligent woman, neat in her habits and she had had many discussions with her." The daughter, witness to the codicil, Mrs. Maney, had better recall and answered questions relative to the execution and competency more responsively than did her mother. She swore that in her opinion testatrix was mentally competent and that Mr. Perry read the codicil to testatrix and that she knew she was changing her will.
The testimony of the subscribing witnesses as to the testatrix's mental competence is entitled to great weight. Here it buttresses the presumption of competency from due execution of the codicil. The proof required is that of a preponderance of the evidence. We find proponents have met this burden.
It is always unfortunate when those who would normally be the objects of a testatrix's bounty are not the recipients thereof. But
"The right of one's absolute domination over his property is sacred and inviolable, so that he may do what he will with his own, if it is not to the injury of another. He may bestow it whithersoever he will and upon whomsoever he pleases, and this without regard to natural or legitimate claims upon his bounty * * *." Holman's Will, 42 Or. 345, 356, 70 P. 908, 913 (1902).
Respondents place emphasis on the failure of direct personal contact between the testatrix and her attorney in connection with the preparation and execution of *666 the codicil as is usual in such cases. While the better practice would have been for her attorney to consult directly with her, there is nothing in his failure to do so which would or should serve to thwart the intentions of the testatrix and invalidate the codicil.
The decree of the circuit court is reversed and remanded for further proceedings consistent with this opinion.