Argued October 21, affirmed November 25, 1974

IN RE ESTATE OF AMANDA LIZZETTE MYERS,
aka AMANDA L. MYERS, DECEASED.

SHEPPARD, *Appellant, v.* KARTES ET AL,
*Respondents.*
528 P2d 88

*Dudley C. Walton,* Roseburg, argued the cause for appellant. With him on the brief were Geddes, Walton & Richmond and Peter Nilsen, Roseburg.

*Gordon G. Carlson,* Roseburg, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

THORNTON, J.

This is a will contest proceeding. The circuit court entered a decree upholding the will and dismissing contestant's petition. Contestant is a daughter of the decedent. She appeals, assigning as error the following:

(1) The will was not executed as required by statute;

(2) The evidence establishes that decedent was subjected to undue influence; and

(3) The trial judge failed to accord a presumption of undue influence based upon confidential relation-

ships between the decedent and two of the beneficiaries, who were also daughters of the decedent.

The will was executed on April 14, 1971. The decedent, Amanda Myers, mother of the opposing parties, died on April 20, 1973, at the age of 87 years. She had married twice in her lifetime. Seven children had been born as issue of her two marriages. She was first married to Theodore Kartes, Sr. Four children were born to this marriage. Their names and birth dates, as appear from the record, were as follows: Betty, 1907 (who predeceased her mother); Dorothy, 1911; Theodore, Jr., July 11, 1914; and Emily, October 24, 1916.

By 1917 the Kartes family was residing in Bozeman, Montana, where Theodore Kartes was a passenger-freight agent for the Northern Pacific Railroad. This marriage terminated in divorce in 1923. Thereafter the decedent married Ray Myers, a rancher in the Bozeman area. Three children were born as issue of this marriage. Their names and birth dates were as follows: Raymond, Jr., February 27, 1926; Emery, 1928; and Ardith, November 11, 1931. Emery predeceased his mother without issue.

Decedent and Ray Myers, with the Myers' children and some of the Kartes' children, continued to reside in the Bozeman area until this marriage terminated in divorce in 1943.

When decedent married Myers she owned a home in Bozeman. During the marriage the couple separately leased and ultimately purchased three grain ranch properties near Bozeman, which the family ranched for a living and upon some of which they lived at various times.

Dorothy Kartes gave birth to a son named John B. Hayden, Jr., on June 17, 1947. Decedent Amanda Myers, Dorothy Kartes, Ardith Myers and John B. Hayden, Jr., left Bozeman in February 1948 for California, where they stayed until the end of the school year. Thereafter they traveled to Douglas County, Oregon, and took up residence in the vicinity of Canyonville. Decedent never again resided in Bozeman. The four of them—decedent, Dorothy Kartes, Ardith Myers and John B. Hayden, Jr.—lived in the vicinity of Canyonville and various places while Ardith concluded her education to become a teacher. Ardith first began teaching in 1954. At this time decedent purchased 105 acres of land on Quines Creek road in Douglas County. The four of them made their home at the Quines Creek ranch until 1965.

When the contestant and her mother became involved in a deep and heated disagreement over contestant's keeping company with Harold Sheppard, the man whom she later married, contestant left the family home. Thereafter decedent refused to have any contact whatsoever with contestant, although they were close neighbors. The estrangement continued until decedent's death in 1973, except for an attempted reconciliation by contestant which took place during decedent's 1971 hospitalization in Grants Pass.

In her will decedent left all of her property in equal shares to her daughters Dorothy Kartes, Emily Kartes and her grandson John Hayden, and expressly disinherited by name all of her other living children and grandchildren.

The claim of undue influence centers around the execution of the will while decedent was hospitalized in Grants Pass during her first illness in 1971.

The evidence establishes that while decedent was en route to the hospital she requested Dorothy and Emily Kartes, who were bringing her to the hospital, to go to an attorney and have him prepare her will and certain deeds disposing of her real property. The will of decedent was drafted by Louis Schultz, a Grants Pass attorney, whose name apparently was chosen at random from the telephone directory by the Kartes sisters.

Our de novo review of the evidence, including all the circumstances surrounding the execution and attestation of the will, leads us to agree with the findings of the trial judge as set forth in the decree that

"* * * the Will of the decedent heretofore offered for probate is a valid Will, duly executed pursuant to the requirements of statute, and expresses the true intent of the testatrix; decedent was not unduly influenced to make said Last Will and Testament and she did not hide, destroy or otherwise revoke said Last Will and Testament."

*See, Wishard v. Turner,* 4 Or App 278, 478 P2d 438 (1970).

■ As we held in *Wishard v. Turner,* supra, it is clear in the case at bar that each subscribing witness knew she was attesting testatrix's will and testatrix's signature thereto. Each witness signed each page of the will and also signed on the last page following the usual attestation clause in presence of the testatrix in accordance with her wishes. The essentials of a valid execution were present notwithstanding discrepancies between various statements, affidavits, deposition and oral testimony of subscribing witnesses.

■ Second, having read the entire record we can find nothing to indicate any undue influence surrounding the execution of the will. We note that a period

572

of two years elapsed between the execution of the will and the decedent's death. We are persuaded, as was the trial judge, that if the testatrix had wished to change her will she could certainly have done so during this two-year period. Although not in the best of health, she was mentally competent up to her death.

■ Nor did the trial judge err in not according a presumption of undue influence based upon alleged confidential relationship between the decedent and Dorothy and Emily Kartes. *Nease v. Wilson, Clark,* 6 Or App 589, 488 P2d 1396, Sup Ct *review denied* (1971).

Summarizing, what comes through to us from the record with unmistakable clarity is that the decedent throughout her life was a hard-working, independent-minded and determined woman. She was something of a matriarch, who ruled her family with a strong hand. She had a long history of cutting herself off from any of her children and grandchildren whom she felt, rightly or wrongly, had treated her badly, or who did not conform their lives to her ideas and standards of filial duty and conduct, or whom she felt were otherwise not entitled to inherit from her. Apparently she felt that at least some of those who wanted to, and did, marry her offspring were 'not good enough,' and had designs on her property. She seemed to have a particular aversion to contestant's husband. No useful purpose would be served by detailing the voluminous evidence concerning the circumstances surrounding the estrangements between the testatrix and her disinherited offspring.

■ As we observed in *Sieben v. Richards,* 8 Or App 487, 490, 494 P2d 253, Sup Ct *review denied* (1972):

"* * * [T]here is no legal duty on the part of a parent to divide his estate equally among his

children; and, further, * * * there is substantial evidence of friction between Mrs. Sieben [testatrix] and the contestant which may well have been the basis of testatrix's decision to disinherit him."

As in *Sieben* there was substantial evidence here of friction in past dealings with her disinherited offspring which may well have been the basis for her decision.

Affirmed.