Argued April 9, affirmed May 13, 1959

IN RE ESTATE OF OSCAR N. ELLINGSON, DECEASED
INGRAHAM *v.* MEINDL

339 P. 2d 447

*Jack H. Dunn,* of Portland, argued the cause for appellant. With him on the brief were Maguire, Shields, Morrison & Bailey, William H. Morrison, and James G. Smith, of Portland.

*Gerald J. Meindl,* of Portland, argued the cause for respondents. With him on the brief were Meindl, Mize & Kriesien, Portland.

Before McAllister, Chief Justice, and Warner, Perry and Millard, Justices.

MILLARD, J. (Pro Tempore)

This is an appeal from an order of the Circuit Court of Multnomah County admitting to probate a document bearing date of February 6, 1947, purporting to be the last will and testament of Oscar N. Ellingson, deceased, and appointing Gerald J. Meindl, one of the defendants, as administrator de bonis non with the will annexed, and dismissing on the merits the petition of plaintiffs contesting said will, with prejudice, and confirming prior appointments made upon probate of said purported will in common form and allowing respondents (defendants here) their costs and disbursements.

The plaintiffs are some of the nieces and nephews of decedent, and his heirs at law. The defendant, George Ellingson, is a step-son of a brother of decedent, who is also deceased. When George Ellingson was about two years old his mother married decedent's brother, and the boy took his step-father's name, and while not adopted, was regarded by all, including decedent, as a member of that family, and always used the family name.

The typewritten document purporting to be the will of decedent is in legal form, signed by decedent, and attested by two subscribing witnesses under the usual attestation clause, and was notarized by the attorney who drew the will and who because of illness, both physical and mental, was unable to testify. One of the witnesses who once worked part-time for the attorney was able to identify her own signature, but could not remember the particular circumstances, and the other witness was not available. Plaintiffs do not contend, however, that the purported will was not properly executed. The document, after providing for payment of expenses, gave his only surviving sister, Anna Ottun, $1.00, and the residue of his estate to his "nephew", George Ellingson. The estate, as shown by the inventory, amounted to $5,093.33.

The sole assignment of error is the action of the trial court admitting to probate the document dated February 6, 1947 as and for the last will and testament of decedent, and in support thereof claims defendants failed to prove testamentary capacity.

■■ In order to establish testamentary capacity it must appear that the testator at the time of making his will comprehended the nature of the act in which he is then engaged, knew the nature and extent of his property, had in mind the persons who were, or should have been, the natural object of his bounty, and the scope and reach of the provisions of the written instrument. *In re Phillips' Will,* 107 Or 612, 618, 213 P 627. Further, such capacity must have been proved by the proponents (defendants here) by a preponderance of the evidence. *In re Faling Will,* 105 Or 365, 441, 442, 208 P 715. However, when the will is executed in due form, as in this case, the proponents (defendants) are entitled to the benefit of certain presumptions.

"The burden of proof of competency of the testator is upon the proponents of the will, but they have the benefit of the presumption that he was competent to make the will, inasmuch as it was executed in due form: Morely v. Silverton Hospital, 138 Or. 75, 95, 5 P.(2d) 92, and cases therein cited. There is also a presumption that every testator is sane: In re Will of Robert Carr, 121 Or. 574, 580, 256 P. 390." *In re Shanks' Estate,* 168 Or 650, 662, 126 P2d 504.

See also, *Trombly et al. v. McKenney, Ex., et al.,* 191 Or 90, 107, 228 P2d 417; *Clauder v. Morser,* 204 Or 378, 386, 282 P2d 352; *Harrington v. Sax,* 138 Or 283, 4 P2d 635.

■ In determining whether or not the decedent possessed testamentary capacity, it must be borne in mind that such determination must be made as of the time of making the purported will (February 6, 1947).

■ We have carefully reviewed the testimony. While we do not intend, nor do we deem it necessary, to give a blow-by-blow description of the evidence, it appears therefrom that decedent was an aged person and, according to plaintiff's brief, was 84 years of age on December 2, 1954, the date of his death, and hence was in the late seventies when the will was executed. He had numerous brothers and sisters, all of whom predeceased him, with the exception of Anna Ottun, who died prior to the institution of these proceedings. Decedent never married, and his sole heirs at law were numerous nieces and nephews, many of whom did not join in this proceeding. He came to Portland about 1934 or 1935, and had little connection with his family after that, with the exception of one niece, Florence Neal, whom he saw frequently between 1936 and 1945, and George Ellingson, who saw him occa-

sionally. The records of his financial transactions and other evidence indicates he was frugal and thrifty, and close-mouthed in discussing the actual details of his financial affairs. It further appears that he used sound judgment in his investments, and the records indicate nothing other than comprehension of the nature and extent of his property. While he indicated to George Ellingson that he did not have much property and that it might be necessary for that person to bury him, he never discussed the details of his finances with George, except to indicate that he was only getting three per cent return on his investments. At one time, prior to the execution of the will, he asked George to bury him, and told him, "if there is anything left, you can have it." He was slovenly and not too clean about his home, and somewhat eccentric and suspicious.

Florence Neal testified that decedent was afraid people would steal from him. In May, 1947, she took her aunt, Anna Ottun, decedent's sister, with Anna's daughter, to visit him and he refused to talk to them or shake hands. But George testified that decedent told him that Julius Ottun, a member of Anna's family, owed him money that was never repaid, and that decedent was bitter about it. Further, decedent discussed various members of the family with George, as well as other matters, and the conversations appeared to be rational. There was some evidence of forgetfulness, such as decedent locking himself out of his apartment, but nothing unusual in a man of that age. On the whole, matters occurring prior to the making of the will indicate testamentary capacity rather than the lack of it.

There was some evidence of deterioration, commencing about a year-and-a-half after the will was made and when decedent moved to another apartment, and that such condition progressed. It is significant,

however, that he continued to properly manage his financial affairs up to the time of his death.

■ Plaintiffs are very critical of the testimony of George Ellingson. We do not so view it. The claimed inconsistency of his statements with relation to important matters can be reconciled with his other testimony. It is apparent decedent knew the nature of the act he was performing when he had an attorney prepare the will. The documentary evidence indicates he knew the nature and extent of his property and that he managed it well. He must have known of the natural objects of his bounty, since he was careful to mention his one living sister. That he understood the scope and effect of his act is evidenced by his prior expressed intent to give George Ellingson what was left after his death. As was said in *Trombly et al. v. McKenney, et al.,* supra, at page 106, "One is not rendered incompetent to execute a will simply because he or she may be slovenly, parsimonious, and eccentric."

We therefore hold that proponents (defendants) have clearly established testamentary capacity by a preponderance of the evidence and hence the circuit court must be affirmed.

We note that plaintiffs have, as a part of their contest of the will, also charged George Ellingson with undue influence. That charge has not been urged here, and properly so, since it cannot be sustained.

Affirmed.