Argued February 23, affirmed April 27, 1972

In the Matter of the Estate of William Aldred
Whitteberry, Deceased.

WHITTEBERRY et al, *Appellants, v.*
WHITTEBERRY et al (No. 110-914), *Respondents.*

496 P2d 240

*George M. Joseph,* Portland, argued the cause for appellants. With him on the brief were Bemis, Breathouwer & Joseph, Portland.

*George Harvey Bowles, Jr.,* Portland, argued the cause for respondents. On the brief were Watson D. Robertson and Martin & Robertson, Portland.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

THORNTON, J.

This appeal is from a decree admitting to probate the will of William Whitteberry, deceased, executed on July 8, 1969. The beneficiaries under this will were decedent's brother, Richard Whitteberry, and two sisters, Grace Winn and Mary Kisor. The contestants are Jack Bird, a nephew of decedent's wife, and James Whitteberry, decedent's nephew. They seek to have this will declared invalid and to have the will executed by decedent on February 18, 1963, de-

clared his true last will and testament. Contestants were the beneficiaries under the earlier will.

The questions presented are whether the decedent had testamentary capacity when the will of July 8, 1969, was executed and whether this will was the product of undue influence.

On January 22, 1969, decedent was hospitalized with a broken hip. He was 71 years old at the time. He was discharged from the hospital on March 14, 1969. A few days after his release his wife suffered a stroke. As decedent was unable to care for himself, he entered the Vancouver Veterans Administration Hospital on March 23, 1969. His wife died on March 29, 1969.

Richard Whitteberry was appointed guardian of the person and estate of William Whitteberry on April 25, 1969. This appointment was confirmed on July 9, 1969. The guardianship order stated that William Whitteberry was, by reason of age, illness and present disability, unable unassisted to properly manage and take care of himself and his property, and was, therefore, incompetent within the definition of the applicable statutes (ORS 126.151 and 126.006 (3)). Richard employed Mr. and Mrs. Udell to live with the decedent and care for him. The decedent was released from the hospital on May 23, 1969. He lived at home under the Udells' care until his death on November 14, 1969, with the exception of the period between August 12 and September 17 when he was again hospitalized.

▆▆▆ In the probate of a will the proponents have the burden of proving testamentary capacity. *Nease v. Wilson,* 6 Or App 589, 488 P2d 1396, Sup Ct *review denied* (1971). The contestants take the position that a presumption that the decedent was

mentally incompetent arises from the appointment of a guardian for him. We reject this contention as this presumption only arises where the guardianship is set up because of the ward's mental incompetence. *In re Southman's Estate,* 178 Or 462, 480, 168 P2d 572 (1946). A guardianship may be established under ORS 126.151 for any person who, because of mental or physical incapacity is unable unassisted to manage or care for himself or his property. *Fahrenwald v. Wachter,* 221 Or 535, 352 P2d 152 (1960). We are unable to determine from the order appointing a guardian for the decedent whether the "illness" which led to his being declared incompetent was physical or mental; therefore we cannot apply the presumption in this case.

The proponents have established that the will was duly executed. *Clauder v. Morser,* 204 Or 378, 386, 282 P2d 352 (1955), held that:

> "The testimony of the subscribing witnesses, aided by the presumption of sanity which follows proof of due execution, carries great weight in determining the decedent's capacity at the time of executing a will * * *."

The subscribing witnesses, Mr. Robertson and his partner, Mr. Martin, were both attorneys. Mr. Robertson drafted the will. His testimony was that he and Mr. Martin had gone to the decedent's home around noon on July 8, 1969. The decedent was able to make small talk about his having been a barber and his health. The decedent knew he had insurance, knew that he had received money from his wife's estate and was concerned about paying off the small obligation remaining on his house. His conversation was normal. He knew what he wanted and that he had a will which represented his wishes.

Mr. Martin testified that the decedent's conversation had continuity and was intelligent; that he read the will, said that it was his will and signed it; that

"* * * He seemed perfectly normal to me and to have a full understanding of what he was doing. He read the will, and I was confident in my own mind that he was perfectly capable and competent to make a will."

■■ Mental competency is determined at the precise moment the will is executed. *Clauder v. Morser,* supra. Testimony as to competency based on contacts with the testator at other times is admissible; however, its probative value diminishes as it becomes further removed from the time of execution. *Nease v. Wilson,* supra.

Although Mr. and Mrs. Udell were not present when the will was executed, they lived with the testator during this period. They testified that he watched the news on television and read the front page and sports section of the newspaper. His conversation was intelligent. Mr. Udell testified that the testator knew the extent of his property, his relatives and which relatives he liked.

Dr. Knight, a psychiatrist at the Vancouver Veterans Administration Hospital, examined the decedent on April 9, 1969. His diagnosis was: "Chronic brain syndrome associated with arteriosclerosis, confused type, incompetent." It was his opinion that the decedent lacked testamentary capacity at that time and that this condition would be unlikely to change. However, he thought that it was possible that the decedent could have moments when he knew the extent of his property, his relatives and people he liked.

Dr. Berger, a staff physician at the Vancouver

Veterans Administration Hospital, was in frequent contact with the decedent during his hospitalization from March 14, 1969, until May 23, 1969. He stated that there were times when the decedent was somewhat more lucid, but in his opinion the decedent was mentally incompetent at that time and that this condition was permanent and progressive.

■ The testimony of the subscribing witnesses has been held to have greater probative value than the testimony of physicians who have treated the testator shortly before and after the execution of the will. *In re Estate of Andersen,* 192 Or 441, 235 P2d 869 (1951). The medical testimony here was based on decedent's mental condition in April and May, six weeks prior to the execution of the will. In addition, we do not view it as being totally inconsistent with a finding that decedent was competent on July 8, 1969. We find that the proponents have established by a preponderance of the evidence that the testator had testamentary capacity at the time the will was executed.

■ The appointment of Richard Whitteberry, one of the principal beneficiaries under the challenged will, as guardian of the testator's person and estate created a fiduciary relationship between them.

> "The existence of a confidential relationship, such as that of guardian and ward, when taken in connection with other suspicious circumstances may justify a suspicion of undue influence so as to require the beneficiary to go forward with the proof and present evidence sufficient to overcome the adverse inference * * *." *In re Southman's Estate,* 178 Or 462, 482, 168 P2d 572 (1946).

This principle is applicable to the present case because of the beneficiary's position as a fiduciary in combina-

tion with the additional factor that it was his attorney who drafted the will.

■ A careful scrutiny of the circumstances surrounding the execution of the will convinces us that the evidence is sufficient to rebut any inference of undue influence. The uncontradicted testimony was that William repeatedly asked Richard to get him an attorney so that he could make a will. The attorney who drafted the will went to the testator's home in June to discuss the disposition the testator wished to make of his property.

The attorney drafted the will and returned at the end of the month to have it executed. The will was executed in spite of the fact that one of the beneficiaries, Grace Winn, had been improperly designated as Grace Whitteberry. On July 8, 1969, Mr. Robertson returned with a corrected will, which was then executed. With the exception of Mr. Martin, who went along to witness the execution of the wills, no one else was present on any of these occasions.

Jack Bird testified that his relationship with the testator and his wife, Alice, was almost a father, mother and son relationship, but after the death of the testator's wife, it was his brother Richard who visited him three and four times a week and saw to his care. On several occasions the testator said that he would like to see Jack Bird and wondered where he was.

There was testimony that in April, Grace Winn had made statements to the effect that Richard was trying to get his hands on his brother's money and that Richard said he would not look after his brother's affairs unless he signed over his will to him. Richard and Grace denied making these statements.

This is a close case, the result of which in the final analysis is dependent upon the credibility of the various witnesses. Although this is an equitable proceeding in which we review the facts *de novo*, where the credibility of the witnesses is a material issue we place great reliance on the findings of the trial judge. *Clauder v. Morser, supra*, 204 Or at 391.

The decree of the trial court admitting the will of July 8, 1969, to probate is affirmed.