Argued June 24, affirmed July 19, reconsideration denied August 25, petition for review denied September 21, 1976

In the Matter of the Last Will and Estate of Grayce L. Hertsche, Deceased

WALLS et al, *Appellants,*

*v.*

SMALL, *Respondent.*

(No. P-102-74, CA 5379)

551 P2d 1310

*Steve Anderson* and *Cecil H. Quesseth,* Salem, argued the cause and filed the briefs for appellants.

*Karl Clinkinbeard,* Medford, argued the cause for respondent. With him on the brief were Holmes, James & Clinkinbeard and Jeannette Marshall, Medford.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

The contestants, several nieces and nephews and a daughter-in-law of the testatrix, appeal from the decision of the circuit court admitting the will in question to probate.

Grayce Hertsche, the testatrix, died in 1974 at the age of 90. She is survived by several sisters, one of whom is Reatha Small, the proponent of the will in question. Additionally, she is survived by numerous nieces and nephews, some of whom along with Alma Burke, the widow of the testatrix's only son, Maurice E. "Billy" Burke, are the contestants.

The will in question was executed on October 30, 1967, when the testatrix was 82 years of age. It replaced a prior will executed in 1963 and amended by codicil in 1964.

By the terms of the 1964 codicil each of the nieces and nephews received a specific bequest of $1,000. Billy Burke was to receive the residue of the substantial estate. Reatha Small was to receive a specific bequest of $10,000 by that will. The will also provided that should Billy Burke predecease the testatrix the residue would be divided between his widow and Reatha Small.

Sometime around the first of January, 1967, Reatha Small and her husband began living with the testatrix in her Portland apartment. Although the evidence is unclear as to who suggested this arrangement, it appears that it was prompted by Mr. Small's need to be near his Portland doctor.

On October 26, 1967, Billy Burke died in California. Three days later a memorandum requesting that several changes be made in the testatrix's will was delivered to her attorney, Garthe Brown. The next day, October 30, 1967, the Smalls took the testatrix to the office of Mr. Brown where the new will was executed.

[ 107 ]

In this new will the specific bequests of $1,000 to each of the nieces and nephews were eliminated. The award of 50 per cent of the residue which Alma Burke would have received under the 1963 will, as amended by the 1964 codicil, since her husband predeceased her, was replaced by a specific bequest to her in the new will of $20,000. Reatha Small was named residuary beneficiary and her husband was made contingent beneficiary of the residue so that he would receive the residue should she predecease him.

The contestants' sole contention on appeal is that the October 1967 will was the product of undue influence exercised by the Smalls upon the testatrix. They argue that a confidential relationship existed between the testatrix and the Smalls and that this, coupled with the numerous "suspicious circumstances" present, places the burden on the proponent to show the lack of undue influence, citing *In re Reddaway's Estate,* 214 Or 410, 329 P2d 886 (1958).

The contestants contend that the following suspicious circumstances discussed in *Reddaway* are present here: (1) the participation of the Smalls in the preparation of the will; (2) a lack of independent advice; (3) secrecy and haste in the execution of the will; (4) a change in the testatrix's attitude toward others; (5) a change in the testatrix's plan of disposing of her property; (6) unnatural and unjust gifts; and (7) the testatrix's susceptibility to influence.

■ First, we agree with contestants that a confidential relationship existed between the Smalls and the testatrix. They lived together for 10 months before the execution of the will. The Smalls to a large extent handled the testatrix's financial affairs during that period. We believe that the above, plus the fact that the testatrix and Mrs. Small were sisters, is sufficient proof of a confidential relationship.

■ We now must determine whether sufficient suspicious circumstances existed to shift to proponent the

burden of proving a lack of undue influence. Where a confidential relationship exists, only slight additional evidence is necessary to cause the burden to shift. *In re Reddaway's Estate, supra; In re Estate of Elise Rosenberg,* 196 Or 219, 246 P2d 858, 248 P2d 340 (1952).

■ Considering first the question of the participation by the beneficiaries in the preparation of the will, the evidence is conflicting and highly speculative. Contestants rely on the fact that the typed memorandum to testatrix's attorney requesting changes in her will was prepared only three days after the death of her only son, a time when the Smalls were living with the testatrix. They argue that the testatrix was unable to type because of arthritis and that one of the Smalls must therefore necessarily have been involved in the preparation of the memorandum requesting changes in the testatrix's will.

The above circumstantial evidence of participation by the Smalls in the preparation of the memorandum is directly contradicted by the testimony of the proponent who testified that testatrix was able to type, and that neither she nor her husband had any part in the preparation of the memorandum.

■ The evidence on this point obviously conflicts. The crucial factor in determining the persuasiveness of conflicting evidence is the credibility of the witnesses involved. Here, the trial court saw and heard the witnesses; we, of course, did not. The trial court by finding the will not to be the product of undue influence, necessarily found the testimony of the proponent to be credible and persuasive. In such cases the decision of the trial court is entitled to great weight. *Clauder v. Morser,* 204 Or 378, 282 P2d 352 (1955); *Whitteberry v. Whitteberry,* 9 Or App 154, 496 P2d 240 (1972).

The contention that the testatrix acted without independent advice is simply against the weight of the evidence. Garthe Brown, the testatrix's long-time

[ 109 ]

attorney and adviser, stated that he talked to the testatrix once on the telephone prior to the preparation of the new will and at the time of its execution. He stated that he was convinced that the testatrix was acting freely, was not being influenced by anyone and had intended the disposition made by the will in question.

Contestants make much of the fact that the new will was executed only four days after the death of the testatrix's only son. We do not view this in the same light. The unexpected death of a major beneficiary of a will is often a reason to change a will. The testatrix was in her 80's at the time of her son's death and certainly was aware that she herself could well pass on at any time. Given the above, it is not surprising, but rather expected, that the testatrix quickly changed her will.

Considering the alleged change in the testatrix's attitude toward others, we find none evidenced in the record other than that expressed in the new will itself which is discussed below.

The changes in the testatrix's plan of distributing her estate and the existence of any unnatural or unjust bequests are so related that they can be best discussed toegether. Of the major changes in the testatrix's will, most are highly understandable and not at all unjust or unnatural. The increased bequest given to the proponent seems natural given the fact she and the testatrix were apparently the closest of the sisters and that the two lived together for seven years earlier in their lives following the testatrix's divorce from her first husband and again for two years after the proponent's first husband died. The above, plus the fact that the proponent and her husband lived with the testatrix for close to a year before the execution of the 1967 will, makes such a bequest very understandable.

The decrease in the amount given to Alma Burke is hardly surprising either. She was not related to the testatrix except by marriage; she was the widow of the testatrix's deceased son.

The only unusual provision in the new will is that giving Mr. Small the residue should Mrs. Small predecease him. This provision is very much like the contingent bequest of the residue to Alma Burke in the 1964 codicil. Both involve bequests to an in-law and were probably inserted to please the blood relative of the testatrix, Billy Burke in one situation and Reatha Small in the other. The comments of Garthe Brown on these provisions are interesting. He noted that just as the bequest to Alma Burke was decreased following the death of Billy Burke, so would the share of Mr. Small probably have been decreased should Mrs. Small have died before the testatrix. With the above in mind, that the testatrix probably never actually intended Mr. Small to receive such a large bequest, the provision is not so unusual.

Lastly, we consider the donor's susceptibility to influence. The testatrix was 82 at the time of the execution of the will but she lived seven years past the execution of the will and it remained unchanged. While she was seeing doctors periodically as do many people of her age, there is no evidence that she was overly susceptible to the influence of others. It is interesting that the Smalls did not move in with her to take care of her, but only so that Mr. Small could be near his doctor. Also, it is interesting that the members of the family affectionately referred to the testatrix as "the General" because of her independence and strong will. In short, we are not convinced that the testatrix was susceptible to the influence of others as contestants urge.

Considering the above, as well as the rest of the record, we are of the opinion that the contestants failed to show sufficient suspicious circumstances to warrant imposing upon the proponent the burden of proving a lack of undue influence. We reach the same conclusion as did the trial judge who had the advantage of seeing and hearing the witnesses.

Affirmed.