Argued and submitted November 21, 1977, affirmed January 16,
reconsideration denied February 23, petition for review denied
April 25, 1978

In the Matter of the Estate of
Darrell Elmer Gentry, Deceased.
GENTRY, *Appellant,*
*v.*
BRIGGS et al, *Respondents.*
(No. 76-33, CA 8147)

573 P2d 322

Paul K. von Bergen, Beaverton, argued the cause for appellant. With him on the brief was Paul K. von Bergen II, Beaverton.

Arthur A. Beddoe, Klamath Falls, argued the cause for respondent Briggs. With him on the brief was Beddoe & Hamilton, Klamath Falls.

Robert H. Anderson and Murphy, Anderson, Cegavske, Roseburg, attorneys for respondent Pioneer Trust Company, joined in the brief for respondent Briggs.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

THORNTON, J.

**THORNTON, J.**

Petitioner Lisa Gentry appeals from a decree admitting to probate the will of her deceased father, Darrell Gentry, after having unsuccessfully challenged the will in circuit court. There are two principal issues on appeal: (1) was the testator mentally competent to make a will and (2) was the will a product of undue influence.

The essential facts are as follows:

Testator was an ex-serviceman with a history of frequent hospitalization for mental illness commencing in 1958. At the time of the execution of the will on October 2, 1969, as well as at the time of his death some six years later, the testator was a mental patient at the Veterans Administration Hospital in Roseburg.

The sole beneficiary under the will was his mother, respondent Noma Briggs.

Petitioner, now aged 22, was the testator's sole issue. Testator and petitioner's mother were divorced in 1957. After her mother's death, when petitioner was 15 years old, petitioner was raised by her maternal grandparents. However, certain federal veterans' benefits and social security payments for her support were provided during her minority. She rarely saw her father as she was growing up, although testator wrote and telephoned her from time to time.

In the will the testator acknowledges that he is the father of petitioner but declares "nevertheless I give, devise and bequest unto my mother, NOMA BRIGGS, * * * all of my property."

The will was prepared by a Roseburg attorney, and witnessed by the attorney and his secretary.

Respondent Pioneer Trust Company of Salem was the executor named in the will.

We summarize the evidence on the two key issues as follows: Testator served in the United States Army

[ 47 ]

from 1952 to 1954, and again from 1956 to 1958, when he was discharged after six months' confinement in the psychiatric ward at Walter Reed Hospital. He was admitted to the Roseburg Veterans Administration Hospital in 1959.

In 1965 testator, while still a patient at this facility, was adjudicated incompetent to manage his own affairs by the circuit court of Douglas County, Oregon, and placed under guardianship, with Pioneer Trust Company named as guardian.

Dr. Esperson, the ward physician under whose care the testator was placed while testator was at the Veterans Administration Hospital from 1967 to 1973, testified that testator suffered from a psychosis diagnosed as schizophrenia; that his mental illness was largely controllable by psychiatric medication; that he was generally lucid so long as he took his prescribed medication, but when allowed to leave the hospital for any extended period would stop taking his medicines and would shortly become psychotic and sometimes obstreperous; that he would then have to be returned to the hospital. The record shows that this pattern of behavior was repeated again and again almost from the beginning of testator's hospitalization at Roseburg until his death. Not infrequently testator would go AWOL from the hospital. Dr. Esperson expressed the opinion, however, that testator was mentally competent to execute a will if not in one of his deranged intervals, and that he was capable of executing the instant will.

In a letter received by Pioneer Trust Company September 29, 1969, three days before the challenged will was executed, testator wrote to Mr. E. E. Smith, a trust officer who was handling his financial affairs at Pioneer Trust Company, stating in part that "I want my mother to inherit my 4 or 5 thousand." This was reiterated by testator on other occasions, including in a letter to his mother postmarked October 6, 1969. In a

[ 48 ]

letter dated September 30, 1969, apparently in response to the letter received from the testator, Trust Officer Smith wrote testator informing him that if he was serious about having his estate go to his mother he should go to some attorney in Roseburg and have him prepare a valid will, taking care to inform the attorney that he was "living currently at the Veterans Administration Hospital at Roseburg."

The attorney who drafted the will, and who was an attesting witness, testified by deposition pursuant to stipulation. He stated that testator came to him on October 2, apparently bearing the above described letter from Smith; that he, the attorney, spent approximately 25 to 30 minutes discussing the details with the testator, including the nature and extent of his property, the persons who were the natural objects of his bounty and the effect of his will prior to drafting the will; that he, the attorney, was fully aware that testator was under guardianship; that notwithstanding testator appeared to be mentally competent when the will was executed. The attorney's secretary, however, had no specific recollection of the testator or the circumstances. The attorney's rough notes of his consultation were received in evidence and correspond with his testimony and the provisions of the will.

■■ Mental competency to make a will is determined at the precise moment the will is executed. *Clauder v. Morser,* 204 Or 378, 282 P2d 352 (1955); *Whitteberry v. Whitteberry,* 9 Or App 154, 496 P2d 240 (1972). As we observed in *Spencer v. Hamit,* 24 Or App 897, 547 P2d 658 (1976):

> "The final test is whether the decedent was competent *at the time the will was executed.* Evidence of incapacitation prior or subsequent to the time of the will's execution is relevant but it lacks the probative value of evidence revealing his mental condition at the material time. Its value diminishes the more removed it is from the crucial date. Thus, the testimony of attesting witnesses and, next to them, of those present at the

[ 49 ]

execution of the will is to be accorded 'great weight' in cases of this kind." 24 Or App at 905.

■ A will made by an insane person may be valid if made during a lucid interval. *In re Faling Will,* 105 Or 365, 445-46, 208 P 715 (1922); *Snyder v. De Remer,* 143 Or 414, 417, 22 P2d 877 (1933); *In re Southman's Estate,* 178 Or 462, 480, 168 P2d 572 (1946); *Kastner v. Husband,* 231 Or 133, 136, 372 P2d 520 (1962); *Spencer v. Hamit, supra* at 899.

■ Although the proponent of a will has the burden of proving the testamentary capacity of the testator, a duly executed will gives rise to a presumption of competency. *Spencer v. Hamit, supra.*

■ Where a testator is under guardianship at the time of the execution of the will and the guardianship was established because of the ward's mental incompetency, a presumption of mental incompetency arises. *In Ames' Will,* 40 Or 495, 503, 67 P 737, 742 (1902); *Whitteberry v. Whitteberry, supra.* However, merely because the testator was under guardianship at the time of execution of the will is not conclusive of his mental incompetency at the time if the evidence shows that the testator possessed the requisite testamentary capacity at the time of the execution of the will. *In re Faling Will, supra* at 445.

■■ After a de novo review of the record, including the testator's voluminous medical records from the Veterans Administration, we conclude that the proponent established by clear and convincing evidence[1] that despite the testator's admitted mental illness he was mentally competent at the time he executed the challenged will, that the will expressed his testamentary wishes and was not the product of undue influence.

---

[1] Where "habitual insanity" has been established, a temporary restoration of testamentary capacity is termed a "lucid interval." The fact that a will was executed during a lucid interval can be established only by clear and convincing proof. *In Re Faling Will,* 105 Or 365, 445, 208 P 715 (1922); *In Re Murray's Estate,* 173 Or 209, 144 P2d 1016 (1944).

■ Petitioner's contention regarding undue influence is without substance. There is simply no evidence of undue influence, or that respondent Noma Briggs attempted to procure the execution of the will or that she encouraged the testator to disinherit his daughter. As in *Walls v. Small,* 26 Or App 105, 551 P2d 1310, *rev den* (1976), here the evidence was totally insufficient to show circumstances surrounding the execution of the will to impose upon proponent the burden of proving lack of undue influence. Testator's mother resided in Klamath Falls. Testator occasionally made critical references concerning his mother for her alleged drinking and several marriages. Nevertheless, whenever testator got into psychiatric difficulty while on furlough or AWOL from the hospital, he always called on his mother to come and get him or for emergency loans. The evidence was undisputed that she always came to his assistance, personally as well as financially. Although she was apparently in frequent contact with him, she did not know that testator had executed a will until she received it in the mail from the attorney a few days after its execution.

As to the testator's relationship with petitioner, the evidence indicates that testator did make efforts to maintain contact with petitioner by letter and by telephone from time to time, and that he made occasional gifts to her. On the whole, however, petitioner did not appear to evince any significant interest in maintaining contact with her father. While she had seen him as a child during annual summer vacation visits to her paternal grandmother (respondent Briggs) in Klamath Falls, she had seen him only once since then when he came to her place of employment in Beaverton. This contact was of approximately only 15 minutes' duration, and occurred probably in 1972 or 1973, according to petitioner's testimony. She never visited him at the Veterans Hospital, although she acknowledged that he had requested her to do so many times.

In summary, the mother's moral and financial support through his years of hospitalization, as contrasted with petitioner's lack of interest in keeping in touch with her father, explains probably more than anything else in this record the testator's ultimate decision to make his mother the sole beneficiary in his will.

Petitioner's remaining contentions are likewise without substance.

Affirmed.