Argued August 24, affirmed December 26, 1978, reconsideration denied
January 30, review denied March 13, 1979

In the matter of the Estate of Ethel Powell Erickson,
Deceased.
HUNT et al, *Appellants—Cross-Respondents,*
*v.*
GALTON, *Respondent,*
and
COOP et ux, *Respondents—Cross-Appellants.*
(No. 124-340, CA 9374)
588 P2d 125

Edwin J. Welsh, Portland, argued the cause for appellants—cross-respondents. With him on the briefs was Welsh, Winfree & Noonan, Portland.

Sidney A. Galton, Portland, waived appearance for Herbert Galton, respondent.

Gary R. Ackley, Cottage Grove, argued the cause for respondents—cross-appellants Duane Coop and Jean Coop. With him on the briefs was Ackley & Kelsay, Cottage Grove.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

In this will contest, the probate court found that the testatrix was unduly influenced and lacked testamentary capacity at the time of the execution of the second codicil to her will, but that her first codicil was free from influence. Contestants appeal the ruling on the first codicil and proponents cross-appeal on the decision regarding the second codicil.

■ As each undue influence or testamentary capacity will contest case must be decided under its own peculiar circumstances, *Kastner v. Husband,* 231 Or 133, 135-36, 372 P2d 520 (1962), a recitation of the relevant facts is in order.

Ethel P. Erickson, the testatrix, died on January 4, 1976, at the age of 83. Among her assets, and the most substantial, was 140 acres of timber land located in Oregon, and valued at approximately $450,000. The decedent had been a schoolteacher and long time resident of Lake Oswego. Since 1969 she had a history of serious medical disablements including breast cancer, severe arthritis, deafness and glaucoma.

The proponents, Mr. and Mrs. Coop, residents and substantial business holders in Creswell, came into contact with the decedent after the Columbus Day storm of 1962, when Mr. Coop did some logging for her. In 1970, when decedent's mother died, Mr. Coop, an experienced logging operator, acted as one of the appraisers for the estate. The Coops had been in contact with decedent since 1970.

Mrs. Collins, a contestant, had been a friend of the decedent for 29 years and during that time, especially after 1969, she performed numerous services for decedent. For these services she was never paid, nor did she request compensation. The other contestant, Edith Hunt, of Billings, Montana, was decedent's cousin and close friend.

Bert McCoy, a Eugene attorney, had been employed as a lawyer for the Coops and when decedent needed

legal assistance for her mother, they recommended McCoy. Thereafter the Coops did not use him as their attorney. McCoy handled decedent's mother's estate and drafted the will and codicils which are the subjects of this appeal.

In April, 1971, Mrs. Erickson met with McCoy for the purpose of drawing a new will. In this instrument the Coops were granted first option to purchase the timber property after certain timber had been cut and sold for the benefit of the residuary legatees. On October 31, 1974, decedent executed the first codicil to the will, which devised to the Coops the timber property outright, subject to the timber harvesting provision of the will.

On December 10, 1975, decedent was admitted to the hospital and on December 23, at her request, Mrs. Collins called McCoy, informed him that decedent was dying and that she wished to see him. McCoy called Mr. Coop and on December 26, 1975, the two of them drove from Eugene to Portland. Upon their arrival at decedent's hospital room, McCoy, with Coop present, made a rough draft of a second codicil. Then he and Coop retired to a restaurant where McCoy finalized the draft. Returning to the hospital, they had the codicil typed by a hospital employee and decedent executed it. This second codicil left the entire timber property to the Coops and did not apportion any death taxes to that portion of the estate.

Later decedent expressed confusion as to what had transpired, and on December 28 she wrote a letter, personally delivered to McCoy, expressing her desire to amend that codicil and to call in another attorney. She died January 4, 1976.

■ We affirm the trial court's decision that the December, 1975, codicil was executed when the decedent did not have testamentary capacity. The testamentary capacity required under ORS 112.225 is measured at the time the instrument was executed, *Clauder v. Morser,* 204 Or 378, 390, 282 P2d 352 (1955); *Spencer*

*v. Hamit,* 24 Or App 897, 905, 547 P2d 658 (1976). The test, as frequently stated by our courts and summarized in *Ingraham v. Meindl,* 216 Or 373, 339 P2d 447 (1959), is:

> "In order to establish testamentary capacity it must appear that the testator at the time of making his will comprehended the nature of the act in which he is then engaged, knew the nature and extent of his property, had in mind the persons who were, or should have been, the natural object of his bounty, and the scope and reach of the provisions of the written instrument. * * *" 216 Or at 375.

■ The three primary witnesses who testified in the present matter gave conflicting reports. Since the resolution of the issues herein presented depends on inferences drawn from this testimony, and the credibility of the speakers themselves, we give great weight to the circuit court's findings, *Hoover v. Trowbridge,* 27 Or App 231, 239-40, 555 P2d 785 (1976), *rev den* (1977). We are in agreement with the trial court that contestants have overcome any presumption of competency and that proponents have failed to carry their burden of proving capacity.

■■ While generally the testimony of a subscribing witness is to be given great weight in determining issues of capacity, *In re Will of Robert Carr,* 121 Or 574, 580-81, 256 P2d 390 (1927), in this instance one of the witnesses was a nurse on the floor who did not have an opportunity to observe decedent in relation to the specific elements of the *Ingraham* test. Further, the testimony clearly establishes that at the time of her signing decedent was in an exremely debilitated condition. She could barely read due to glaucoma and had great difficulty hearing. She had been treated with a strong narcotic which characteristically interferes with cognitive powers and causes one to be very drowsy. Her treating physician testified that while she may have been more lucid at some times than others, her physical illnesses caused a dulling of awareness and intellectual processes. He further stated that she

was in extreme pain which preoccupied her thoughts, that her attention span was approximately 30 seconds and that she did not know the extent of her property. Also testifying in this regard was a psychiatrist, who upon a hypothetical series of questions concluded that decedent would have had great difficulty knowing what she did and was psychologically dependent on those about her. Finally, decedent told her doctor and Mrs. Collins that she did not know what she had signed and that she was confused and only signed the papers to get Coop and McCoy out of her room.

We conclude decedent lacked testamentary capacity at the time the second codicil was executed. It is unnecessary to determine if it was the product of undue influence.

■■ We turn to contestants' position that the 1974 codicil is void due to undue influence. It is their contention that this first codicil was merely part of a larger overall scheme which became manifest at the execution of the second codicil. We agree with the trial court that contestants have failed to carry their burden of proof, *e.g. Estate of Allen,* 116 Or 467, 499 241 P 996 (1925), for even had there been such a scheme, the undue influence would still have to be manifest at the time each challenged instrument was signed, in order to vitiate the bequest. *Roblin v. Shantz, Executrix,* 210 Or 371, 378, 311 P2d 459 (1957). The factors set out in *In re Reddaway's Estate,* 214 Or 410, 421-27, 329 P2d 886 (1958), were not met at the time of execution of the first codicil.

Affirmed.