Argued and submitted October 28, 1991, affirmed on appeal and on cross-appeal March 11, 1992

## William John PERRY,
*Appellant - Cross-Respondent,*

*v.*

## Stanley N. ADAMS,
*Respondent - Cross-Appellant.*

(A8608-04757; CA A64658)

827 P2d 930

Michael J. Morris, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Bennett & Durham, Portland.

Joan O'Neill, Portland, argued the cause for respondent - cross-appellant. With her on the brief were G. Kenneth Shiroishi and Dunn, Carney, Allen, Higgins & Tongue, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

## RIGGS, J.

Plaintiff appeals from a judgment for defendant in a legal malpractice action. He claims that defendant was negligent in failing to have witnesses sign a will under which plaintiff was the sole beneficiary. We affirm.

Helen Sharkey, the testator, had a history of mental and emotional problems. Her medical doctor, who had treated her for 15 years, described her as a schizoid personality. She also received treatment from a psychiatrist for a lengthy period of time and once received treatment at a hospital for a nervous breakdown. In 1984, Sharkey became ill and was admitted to the hospital on August 9. On August 13, 1984, her doctor wrote a letter stating that Sharkey had terminal cancer, was disoriented and needed someone to attend to her affairs. She could not answer questions or pass tests to establish mental orientation and appeared to be having delusions. On August 15, 1984, she was moved from the hospital to a nursing home. In his deposition, plaintiff said that, at the nursing home, she "acted kind of funny" and her mind "wandered" and that he thought she was "having another nervous breakdown."

After Sharkey was admitted to the hospital in early August, plaintiff showed Mary Belle Layton what appeared to be Sharkey's will. It was handwritten in pencil on the back of an envelope addressed to plaintiff. It was signed twice and read:

"I, Helen M. Sharkey, being of sound mind, do will and bequeath all my property and worldly goods to Will J. Perry this 29th day of May 1982.

"Signed - Helen M. Sharkey
"Helen M. Sharkey"

It was not witnessed. Plaintiff gave contradictory testimony about who found the will, where it was found and whether he had discussed making the will with Sharkey.

On August 20, 1984, plaintiff hired defendant to determine if the handwritten will was valid. Defendant determined that it was not valid, because it had not been witnessed, and agreed to see if it could be properly witnessed. He suggested that two people, Layton and Geraldine Hiscoe, take the will with them to the nursing home and, depending on

Sharkey's condition, ask her about the will from a list of questions that defendant had prepared for them.

They went to the nursing home on August 22, 1984, and asked Sharkey the questions. They went through the list a second time and then called defendant to request that he come to the nursing home. Defendant watched while one of the women again asked Sharkey the questions. Although Sharkey was able to answer some of them, he felt that she "didn't track well with what was going on while [he] was in that room." When asked if she recognized the signature on the will, she responded that she could not see it well. Neither could she read the will; however, after someone read it aloud to her, she identified it as her will. Defendant discontinued the questioning when it became apparent that she was "drifting off" and was unable to respond.

After researching the issue, defendant determined that the applicable statute does not specify when witnesses must sign a will. He decided that, in the light of Sharkey's uncertain mental condition, it would be better to have the witnesses seek a clearer acknowledgment of the will at a later time and, if that could not be obtained, to have the witnesses sign the will later.

On August 25, 1984, Sharkey died. The witnesses signed the will on September 13, 1984, and it was admitted to probate. Sharkey's sister challenged the will, alleging fraud, lack of testamentary capacity and undue influence. Before the estate was closed, we decided *Rogers v. Rogers*, 71 Or App 133, 691 P2d 114 (1984), *rev den* 298 Or 704 (1985), which held that witnesses must sign the will before the testator's death. The probate court set the will aside, because the witnesses had not signed it before Sharkey died, and the estate was probated as intestate. Plaintiff then brought this action, alleging that defendant had been negligent in failing to have the witnesses sign the will before Sharkey's death. The jury returned a verdict for defendant.

Plaintiff's first assignment of error is that "[t]he trial court erred in failing to instruct the jury that testamentary capacity was to be measured at the time the will was executed,

rather than the time the will was acknowledged."[1] Plaintiff's argument shows that he equates execution of a will with its signing. He is wrong.

The rule is well settled that testamentary capacity is determined at "the precise moment" that the will is executed. *Gentry v. Briggs*, 32 Or App 45, 49, 573 P2d 322, *rev den* 282 Or 189 (1978); *see also Kastner v. Husband*, 231 Or 133, 136, 372 P2d 520 (1962); *Clauder v. Morser*, 204 Or 378, 385-86, 282 P2d 352 (1955); *Hurd v. Mosby*, 47 Or App 951, 955, 615 P2d 1115 (1980). A will has not been executed until all of the requirements of ORS 112.235 have been satisfied. *See Rogers v. Rogers, supra,* 71 Or App 133. ORS 112.235 provides, in relevant part:

"A will shall be in writing and shall be executed with the following formalities:

"(1) The testator, in the presence of each of the witnesses, shall:

"(a) Sign the will; or

"(b) Direct one of the witnesses or some other person to sign thereon the name of the testator; or

"(c) Acknowledge the signature previously made on the will by the testator or at the testator's direction.

"* * * * *

"(3) At least two witnesses shall each:

"(a) See the testator sign the will; or

"(b) Hear the testator acknowledge the signature on the will; and

"(c) Attest the will by signing the witness' name to it."

---

[1] Preliminary to his first and second assignments of error, plaintiff argues that it is not clear from the verdict whether the jury found that defendant was not negligent or that defendant was negligent, but the negligence did not cause any injury because Sharkey lacked testamentary capacity. He does not contend that the jury could not have found that defendant was not negligent. Rather, he contends that, because testamentary capacity must be determined when Sharkey signed the will in 1982, and there is no evidence that she was incapable at that time, a verdict based on the second ground is unsupported by the evidence. He argues that, if the court cannot determine whether the verdict was based on an allegation supported by the evidence or one unsupported by the evidence, a new trial is required. *See Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 357, 788 P2d 428 (1990).

As we discuss in the body of the opinion, plaintiff's argument depends on an incorrect interpretation of the law. Under the correct legal standard, the evidence supports both grounds for the verdict. Therefore, *Whinston* does not apply.

The statute requires that witnesses be present when the testator signs the will or acknowledges the signature on the will. In other words, a will is not executed when the testator signs the will *unless* that act is done in the presence of witnesses and the witnesses then attest the will. The trial court did not err in refusing to instruct the jury that testamentary capacity is determined when the testator signs the will, because that is an incomplete statement of the law.

Plaintiff next asserts that "[t]he trial court erred in allowing evidence of the testatrix's mental condition at or near the time she acknowledged her signature on the will." In the light of our decision on plaintiff's first assignment of error, this assignment requires no discussion. The trial court did not err.

Plaintiff last assigns error to the denial of his motion for a directed verdict on defendant's affirmative defenses. We find no merit in plaintiff's arguments and further discussion would be of no benefit.

In the light of our decision on the appeal, defendant's cross-appeal is moot.

Affirmed on appeal and on cross-appeal.